[No. 5842.]

## THE GREAT WESTERN RAILWAY CO. v. ACKROYD.

1. **Eminent Domain — Damages** — The land owner whose premises are to be divided by a railway, rendering a private crossing necessary, as well as an artificial conduit to conduct water for irrigation from one part to another, is not required to accept the promise of the railway company that it will construct these conveniences. . He may insist 'upon an award in money of all the damages which he will sustain, taking upon himself the burden of doing whatever is necessary to the enjoyment of his lands after the taking.—P. 458.

2. **Appeals—Oral Argument**—Either party, on request, is entitled to an oral argument, but a demand therefor separate from the brief should be made in writing and filed with the clerk. —P. 459.

*Error to Weld County Court.*
*Hon. Charles E. Southard, Judge.*

Mr. H. F. HAYNES, for plaintiff in error.

Mr. H. E. CHURCHILL, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Special proceeding instituted by the railway company as petitioner, under the eminent domain act, to condemn a right of way for its railroad across the lands of respondent. The hearing was before the court and a jury. Evidence of both parties was produced, the jury inspected the premises, the court instructed them on questions of law and counsel submitted their arguments. The jury returned a verdict, in the statutory form, in which they found the actual value of the strip of land taken to be $350 and the damages to the rest of the respondent's land not taken $770, benefits nothing. The court overruled petitioner's motion for a new trial and confirmed the verdict of the jury. To review the final judgment

petitioner sued out this writ of error. The following facts will elucidate the legal questions involved:

Respondent is the owner of a tract of 180 acres of agricultural land, across which petitioner's railway, as surveyed, runs east and west. The strip sought to be acquired for right of way contains five acres, leaving twenty acres lying to the north and 155 acres to the south. An irrigating ditch crosses the lands from north to south, and is used for irrigating the same. The plan on which the engineers of petitioner were constructing the roadbed included the construction and maintenance of a farm crossing which was to be on grade and with proper arrangements of gates and fences to enable the land owner readily to cross the track; it was also planned to construct a trestle bridge across a natural depression and water way on the premises, and to place a steel siphon, with proper approaches, to permit the passage of water across the track from the lateral ditch north of the railroad cut to the same ditch south thereof.

Petitioner asked the court to instruct the jury in substance, that while they were not to consider its mere promises as to its future intentions, they might take into consideration the actual plans on which its railroad is in course of construction as shown by the evidence, including, if they so find from the evidence the fact to be, that it has planned to construct a trestle bridge across the center of a draw or depression, a siphon where the irrigating ditch of respondent crosses the right of way, and one farm crossing; and if hereafter it should change its plans so as to inflict greater injury on respondent's adjoining lands than would be occasioned by its present plans, then respondent or his grantees might recover damages from it, if any are occasioned by such subsequent change.

In another instruction petitioner asked the court to instruct the jury that in crossing any watercourse, natural or artificial, petitioner, in constructing its roadbed, must construct and maintain proper appliances to permit of the water flowing unobstructed across and along the railway track from the watercourse above to the watercourse below the right of way, and that the same is a continuing duty.

The court refused to give these instructions, and in lieu thereof told the jury that the statutes of Colorado do not require a railroad, in passing through lands, to construct and maintain necessary farm crossings across, or to flume or siphon, the railroad track or right of way, and that if under the evidence and from their inspection of the premises they believed that for the proper and reasonable use of the land it is necessary to construct and maintain one or more farm crossings and a flume or siphon, or both, across the railroad track, the burden of construction and maintenance, in so far as it depreciates the market value of the land, is a proper element of damage to be considered by the jury in ascertaining the amount of damages, if any, to the residue of the land; and the court also instructed the jury that they could not consider any mere promises of petitioner as to its future intentions with regard to the use and management of the strip of land taken for its right of way, and that it would obtain, under our statute, a fee simple title to the strip taken for such purpose. The giving of this instruction by the court and the refusal of those asked by petitioner constitute substantially petitioner's grievance here.

The authorities upon this subject are not harmonious. A leading case in favor of petitioner's contention is *St. Louis, Keokuk & Northwestern Railway Company v. Clark et al.*, 121 Mo. 169, 195, reported also in 26 Lawy. Rep. Ann., p. 751, where the

conflicting authorities will be found in the notes of the learned annotator. We will not burden this opinion with reproducing them.

Respondent contends that whatever may be the view in other jurisdictions, this court in *B. & C. R. Co. v. Schweikart*, 10 Colo. 178, 183, has laid down the law in accordance with the instructions given by the lower court. In that case the land owner claimed, as one element of damage caused by the building of a railroad across his premises, the destruction of his private way by which he had access from one part thereof to another. The railway company offered to give to respondent another way which it claimed would equally serve his purpose. Respondent did not choose to accept the offer. This court held that our constitution and eminent domain act contemplate that a land owner shall receive his compensation in money, hence the proposition of the railway company to the respondent to compensate him in whole or in part for the destruction of his private way by giving him another was of no avail if respondent did not choose to accept it. The court cited in support of its conclusion a number of cases which, in the foregoing notes to the annotated report, are said to lay down a doctrine in accordance with the instructions which the lower court gave in this case. The annotator says that they are opposed to the weight of authority, but this court is committed to their doctrine.

But if it were otherwise, and the instructions the court below gave are wrong and those asked by petitioner right, how has the railway company been injured? Both parties admit that to the full and proper enjoyment of the residue of respondent's lands one or more crossings over, and a flume above, or a siphon under, the track are essential. It is not claimed by petitioner that in ascertaining the damages to the residue the jury awarded for the element

included in the construction and maintenance of the foregoing facilities a greater sum than the reasonable cost thereof; but the contention is that because petitioner proposed to assume for itself such construction and maintenance, respondent must accept its offer; and since, as to these items, no damage would be occasioned, respondent cannot be allowed anything for them. Assuming, as we may in the absence of a contrary showing, that respondent can construct and maintain these appliances as cheaply as petitioner, and that the jury's estimate was on such basis, in what respect is petitioner harmed if such burden is accepted and discharged by respondent? If the latter does it, petitioner is relieved of the cost of original construction and forever exempt from the continuing duty of making repairs. Respondent chooses to receive his compensation in money, and out of the award, which is only the actual cost, he proposes to furnish his land with the conveniences that will enable him properly to use it. Petitioner is thus required to pay directly to respondent in money only the sum which it would have to pay if it, rather than respondent, had in the first instance constructed the works and thereafter continually kept them in repair.

Our constitution and statute contemplate compensation to the land owner in money. That would seem to be conclusive upon the courts, and we are impressed with the reasonableness of the requirement. Notwithstanding the decisions of some learned courts to the contrary, we do not see why, in a case like this, the land owner should be required to accept the promise of the railway company to do certain things which would enable him to utilize his land, rather than to make provision therefor himself and receive, as an element of his damage, what such utilization would cost him. Petitioner has not been

required to pay the respondent any more than it would have to pay if the instructions which it asked had been given.

On the last page of the reply brief of plaintiff in error, request is made for an oral argument. This request was not called to the attention of the clerk when the brief was filed, or at the time the cause was ready for submission and was not known to the court until after the assignment for writing the opinion was made. This is not the right way to secure an oral argument. Under our practice either party on proper request is entitled to an oral argument on final hearing, but good practice requires that such request be put in writing or print and filed with the clerk as a separate paper, so that he may put the cause on the list of cases for oral argument. Neither the court nor the clerk can be asked to search the record or briefs of counsel to ascertain if oral argument is desired.

Perceiving no prejudicial error in the judgment, it is affirmed.                          *Affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.