**COORS BREWING COMPANY,**
**Plaintiff–Appellee,**

v.

**Renny FAGAN, Executive Director of the**
**Colorado Department of Revenue,**
**Defendant–Appellant.**

**No. 96CA0634.**

Colorado Court of Appeals,
Div. II.

June 26, 1997.

Rehearing Denied July 24, 1997.

Certiorari Denied Jan. 20, 1998.

Victor F. Boog, P.C., Victor F. Boog, Lakewood, for Plaintiff–Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Carolyn Lievers, Assistant Attorney General, Denver, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Renny Fagan, Executive Director of the Department of Revenue (Department), appeals from a judgment of the trial court ordering the Department to refund to plaintiff, Coors Brewing Company (Coors), certain use taxes paid by Coors. We affirm.

From September 3, 1991, to January 21, 1992, Coors paid $271,834 in use taxes on computers, electrical components, piping, tanks, "clean-in-place" systems, and other components of its "load-out facility." The load-out facility is the system Coors uses to prepare unfinished beer for shipment by rail to Shenandoah, Virginia, where the beer-making process is completed for some of its light beer.

From December 1, 1988, to November 30, 1992, Coors paid $448,286 in use taxes on a "brewing adjunct" it adds to its beer during the manufacturing process.

Coors sought a refund of these taxes from the agency. After a hearing, the deputy

director of the Department of Revenue determined that Coors was entitled to a refund on use taxes paid on enzinger filters and certain beer-chilling equipment because, in the deputy director's determination, they were used "directly" in the manufacture of the beer. Accordingly, the Department refunded the taxes paid on the enzinger filters, on the piping that connected it to other exempt machinery, and on the beer-chilling equipment.

The deputy director determined, however, that Coors was not entitled to a refund on taxes paid on the other components of the load-out facility, on the ground that these components were not used directly in the manufacture of beer because they did not come into contact with and alter the beer. The deputy director also determined that Coors was not entitled to a refund on the taxes paid on the brewing adjunct because the primary purpose of the adjunct was not to become a component part of the beer, but was, rather, to produce an enzymatic reaction.

Pursuant to § 39–21–105, C.R.S. (1994 Repl.Vol. 16B), Coors sought *de novo* review in district court.

After an evidentiary hearing, the court found that the components of the load-out facility fell within the exemption for use taxes for machinery used directly in the manufacture of tangible personal property. It also found that, under § 39–26–203(1)(f), C.R.S. (1994 Repl.Vol. 16B), the brewing adjunct was tangible personal property which entered into the processing of and became an ingredient and component part of the product manufactured and was, therefore, exempt from state use taxes. Accordingly, the court ordered the Department to refund $632,121 to Coors, with appropriate interest.

■ The Department appeals, contending that the trial court's decision was based on improper legal standards and unsupported factual determinations. We conclude, however, that the trial court correctly applied the law. Furthermore, the court's factual determinations are amply supported by the record and, therefore, are binding on review. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979) (when the trial court is the trier of fact, its factual findings are binding on appeal if adequately supported by the record).

## I.

Section 39–26–203(1)(y), C.R.S. (1994 Repl. Vol. 16B) exempts from use taxes any machinery that is exempt from sales taxes under § 39–26–114(11), C.R.S. (1994 Repl.Vol. 16B). As then in effect, § 39–26–114(11)(a), C.R.S. (1994 Repl.Vol. 16B) provided an exemption from sales tax for:

> *purchases of machinery* ... by a person engaged in manufacturing *to be used in Colorado directly and exclusively by such person in manufacturing* tangible personal property, for sale or profit.... (emphasis added)

The pertinent agency regulation then in effect, Department of Revenue Regulation 26–114.11, 1 Code Colo. Reg. 201–4, provided that:

> Direct use in manufacturing is deemed to begin at [the] point at which raw material reaches [the] first machine involved in changing [the] form [of] material and ends at [the] point at which manufacturing has altered [the] material to its completed form, including packaging, if required. Equipment used to move personalty from one direct production step to another in a continuous flow is deemed part of direct use. To be used directly in manufacturing, equipment must act upon and have a positive effect on the manufactured article.

The Department contends that the statutory exemption, as amplified by the regulation, requires that, in order to be used directly in the manufacture of beer, each machine component must come into contact with and alter the raw materials from which the beer is made. Thus, the Department argues, because the clean-in-place systems and other components of the load-out facility do not physically alter the form of the beer, the trial court erred in finding them exempt from use taxes. We disagree.

By the plain terms of the statute, what is exempt under this regulatory scheme—and what necessarily must be used directly in manufacturing—is "machinery." Thus, the

critical issue here is what constitutes machinery at the Coors brewing facility.

At the time of Coors' purchases of the components of the load-out facility, "machinery" was not defined in the pertinent statute, in the regulations, or in the case law.

However, as noted by the trial court, according to *Random House Webster's Collegiate Dictionary* 814 (1992), "machinery" is, in pertinent part:

1. an assemblage of machines or mechanical apparatuses. 2. the parts of a machine, collectively. 3. any system by which action is maintained or by which some result is obtained.

And, "machine" means:

1. an apparatus consisting of interrelated parts with separate functions, used in the performance of some kind of work: a sewing machine ... 2.a. Mech. a device that transmits or modifies force or motion ... 5. any complex agency or operating system.

By these definitions, machinery may be made up of any number of interrelated parts, apparatuses, and machines. *Cf.* Colo. Sess. Laws 1996, ch. 298, § 39–26–114(11)(c)(I) at 1857 ("'Machinery' means any apparatus consisting of interrelated parts used to produce an article of tangible personal property. The term includes both the basic unit and any adjunct or attachment necessary for the basic unit to accomplish its intended function.").

■ Accordingly, the pertinent question is not, as the Department contends, whether each individual component of the load-out facility comes into physical contact with and alters the beer. Rather, the question is whether each individual component of the load-out facility is a constituent part of *machinery* that acts upon and has a positive effect on the beer.

Here, the trial court expressly found that the items purchased by Coors for use in the load-out facility together constituted "machinery" or "parts thereof" as those terms are used in §§ 39–26–114(11)(a) & 39–26–203(1)(y):

*The items* installed in the Golden beer load-out facility for use in the 'Shenandoah Process' *constitute an assemblage of machines consisting of interrelated parts* with separate functions [or ...] which collectively operate in a continuous process to transform the raw, natural ingredients of beer into a progressively more refined and enhanced product which does not attain its ultimate and completed form until filtered, blended, and packaged in Shenandoah, Virginia. (emphasis added)

The court also found that the contested components were an "integral part of the machinery comprising the 'Shenandoah Process.'" Further, the trial court found that the machinery that manufactures light beer through the "Shenandoah Process," taken as a whole, both acts upon and has a positive effect on the beer.

By these findings, the court necessarily rejected the Department's argument that the chilling and filtration systems and the valves, pumps, motors, pipes, and computers of the load-out facility were no more than conduits, the sole purpose of which was to transport the beer from the enzinger filters to the rail car for shipment to Virginia. Similarly, the trial court rejected the Department's contention that the function of the clean-in-place systems simply was to maintain or clean the machinery and specifically found that these systems functioned to create a chemically inert, biologically sterile, and oxygen-free environment that is essential to product integrity and the maintenance of flavor in the manufacture of beer.

■ It was not contested here that the Shenandoah Process alters the form of the raw materials: The trial court found that the "total process of converting water, malted barley, hops, yeast and other adjuncts, such as rice, corn starch, and [the brewing adjunct] into finished beer constitutes 'manufacturing.'" Thus, the trial court correctly determined that the clean-in-place and the other components of the load-out facility were exempt from use taxes under § 39–26–114(11)(a) & 39–26–203(1)(y) as purchases of machinery to be used directly in manufacturing.

II.

The Department also contends that the trial court incorrectly determined that the

brewing adjunct was exempt from use taxes under the "processing clause" exemption in §§ 39–26–102(20)(a) & 39–26–203(1)(f), C.R.S. (1994 Repl.Vol. 16B). Again, we disagree.

Under §§ 39–26–102(20)(a) & 39–26–203(1)(f), sales and use taxes do not apply to purchases of:

> tangible personal property by a person engaged in the business of manufacturing, compounding for sale, profit, or use, any article, substance, or commodity, which tangible personal property *enters into the processing of or becomes an ingredient or component part of the product* or service which is manufactured, compounded, or furnished . . . (emphasis added)

The circumstances under which this exemption applies have been clarified by case law. Thus, for tangible personal property to enter into the processing of the manufactured product, it "must become a constituent part thereof, wholly or partially, by either chemical or mechanical means." *Bedford v. Colorado Fuel & Iron Corp.*, 102 Colo. 538, 549, 81 P.2d 752, 757 (1938). Further, to be a constituent part, tangible personal property must be "an essential component of the finished product." *C.F. & I. Steel Corp. v. Charnes*, 637 P.2d 324, 328 (Colo.1981).

As the Department points out, the processing clause exemption does not apply to purchases of property to be used "as an aid in manufacturing, producing or processing personal property and not for the purpose of physically incorporating it into the manufactured article to be sold." *See* Department of Revenue Regulation 26–102.20, 1 Code Colo. Reg. 201–4. Based on this language, the Department takes issue with the trial court's factual findings, asserting that the brewing adjunct is not exempt because its purpose was not to become a component part of the beer, but was, instead, to aid in the manufacture of the beer.

Here, however, the trial court assessed the conflicting testimony and specifically found to the contrary. With record support, the court found that the brewing adjunct "is a component and ingredient" of Coors Light Beer and that it "enters into the processing of Coors Light Beer by being injected into the wort before fermentation, it becomes a component part of the wort and remains in the wort in all subsequent processing steps, and is a constituent part of the finished product." The court also specifically found, again with ample record support, that the brewing adjunct is a desirable component of the beer, that it becomes a component of the beer by physical means, that it is essential to the brewing of the beer, and that it is not a tolerated impurity in the beer.

In addition, to the extent that the Department argues that the decision in *C.F. & I. Steel Corp. v. Charnes, supra*, presents an analogous factual setting that requires a result contrary to the one here, we also disagree.

In *C.F. & I. Steel Corp.*, minuscule amounts of refractories, which were designed to protect furnaces and other steel-making equipment from the intense heat generated by the steel-making process, ended up in the finished product. Because the presence of the refractory material in the finished steel was inadvertent, the court determined that the refractories were not exempt. Here, in contrast, as noted, the brewing adjunct was deliberately injected into the mixture with the intent that it become part of the finished beer.

Further, although the primary function of the graphite electrodes in *C.F. & I. Steel Corp.* was to generate the heat needed to melt the material used to make steel, they were occasionally dipped into the molten metal to increase the carbon level. Because this process would consume only a fraction of the electrode, the court determined that the electrodes did not, "wholly or partially," become a constituent part of the product either by physical or chemical means. Here, in contrast, as found by the trial court, the brewing adjunct became, in its entirety, a constituent part of the beer by chemical means.

The judgment is affirmed.

PLANK and BRIGGS, JJ., concur.