**CITY OF WESTMINSTER, a municipal corporation, Petitioner–Appellee and Cross–Appellant,**

v.

**JEFFERSON CENTER ASSOCIATES, Respondent–Appellant and Cross–Appellee.**

No. 96CA0080.

Colorado Court of Appeals, Div. IV.

Oct. 16, 1997.

Rehearing Denied Dec. 11, 1997.

Certiorari Denied June 22, 1998.

Godin & Baity, L.L.C., Mari K. Perczak, Kelly K. Robinson, Denver, for Petitioner–Appellee and Cross–Appellant.

Nichols & Hecht, L.L.C., Charles B. Hecht, Holly I. Holder, P.C., Holly I. Holder, Denver, for Respondent–Appellant and Cross–Appellee.

Opinion by Judge ROY.

In this condemnation proceeding, respondent, Jefferson Center Associates (JCA), appeals the judgment of the trial court entered upon the findings of a commission awarding compensation for the taking by the petitioner, the City of Westminster (City), of permanent and temporary construction easements across four parcels of real property. The City cross-appeals the order of the trial court denying its motion for costs and bill of costs. We reverse the judgment, affirm the order, and remand for a new trial.

The City needed an easement to construct and operate an underground water pipeline, known as the Kinnear Ditch Replacement Pipeline, to transport raw water from Coal Creek to Standley Lake. JCA is a non-profit association of landowners which represented the four individual owners of the affected parcels. The City went into possession and installed its pipeline by agreement of the parties prior to the commencement of these proceedings.

The trial court appointed a commission to hear the evidence and determine just com-

pensation pursuant to § 38–1–105, C.R.S. 1997. However, while the trial court remained available for consultation, it did not preside over and was not present during the hearing. *See Board of County Commissioners v. Vail Associates, Ltd.*, 171 Colo. 381, 468 P.2d 842 (1970).

At the time of appraisal the parcels were vacant, undeveloped, and unplatted land zoned for industrial and commercial uses; were being held for future development; and were being used for grazing livestock.

With respect to the permanent easement, both appraisers formed an opinion as to a value per acre, multiplied that value by the number of acres in the easement, and divided the product by two to reflect the taking of an easement only. Both appraisers used the same technique to value the land occupied by the temporary construction easement but determined a fair rental for the period of use. The appraisers differed widely, however, on the method by which they arrived at the initial value per acre.

The City's expert formed an opinion of the value of the easement as a part of the whole parcel. That is, he determined the value per acre of the entire parcel, or the average value of an acre in the parcel.

JCA's expert, in contrast, formed an opinion of the per acre value of that portion of the whole parcel through which the easement ran as a severed parcel and multiplied that value by the number of acres acquired. In the opinion of JCA's expert, the portion of the parcels through which the easement ran was worth substantially more than the balance of the parcels, primarily because portions of the easement were immediately adjacent to a highway and thus would be developed earlier and at less cost. The opinion of JCA's expert as to the value of the easements was substantially higher than that of the City's expert.

The commissioners adopted the opinion of the City's expert, and the trial court entered an award based on the findings of the commissioners. In a separate order, the court denied the City's motion for costs pursuant to § 13–17–202, C.R.S.1997. This appeal followed.

## I.

JCA first argues that the trial court erred in instructing the commission it could not consider sales of platted property in determining the fair market value of the unplatted parcels. We agree and remand for a new trial.

During the hearing, the City objected to the introduction of a comparable sale, the "Storm Property" relied upon by JCA's expert, on the asserted ground that, as a matter of law, the comparable sale was inadmissible. The commission requested guidance from the trial court and the court deferred ruling on the objection until it rendered its instructions. The evidence was admitted.

Thereafter, the City submitted a proposed instruction which stated:

In determining the fair market value of the property actually taken, you must not consider evidence of the sales of platted, subdivided property.

JCA timely objected to the instruction. The trial court refused to make a record of the objection, but did advise the commission that the instruction should apply only if the commission found that the subject properties were not divisible and "generally the same character throughout."

In condemnation proceedings, evidence of sales of comparable properties is admissible to assist the commission in determining fair market value, but the properties must be sufficiently similar to have some bearing on the value of the property under consideration. *Department of Highways v. Schulhoff*, 167 Colo. 72, 445 P.2d 402 (1968).

Here, both experts agreed that there were few, if any, good comparables, and consequently, both placed considerable reliance on comparable sales of agricultural and residential properties which were temporally and geographically remote.

Whether property is sufficiently similar to be of assistance to the commission is a determination within the sound discretion of the trial court or, absent the trial court, the commission. *Department of Highways v. Schulhoff, supra.* Pursuant to § 38–1–105,

C.R.S.1997, the commission *may* seek the assistance of the trial court with regard to evidentiary rulings, but it is not required to do so and may make such rulings itself. *City of Aurora v. Webb,* 41 Colo.App. 11, 585 P.2d 288 (1978).

In determining whether comparable sales are similar to the subject property, a court should look to whether the properties sold are similar in locality and character and the sales not so removed in time to make any comparison unjust. *Department of Highways v. Schulhoff, supra.* Subdivided property may be insufficiently similar to unsubdivided property if it includes improvements such as streets and utilities that significantly affect its value. *Herring v. Platte River Power Authority,* 728 P.2d 709 (Colo.1986); *see also Department of Highways v. Schulhoff, supra.* However, the rule regarding the admissibility of evidence with respect to the value of property is expansive, not restrictive, and the commission is entitled to consider any competent evidence that may assist it in determining value. *City of Aurora v. Webb, supra.*

The Storm Property was a similarly zoned 5.28 acre parcel located directly across the highway from one of the subject parcels. It had been subdivided from a larger parcel in 1968, had water available to it, had been preliminarily graded, had a highway access permit, and had an installed septic system.

At the time of its sale it was vacant and there were no interior streets, curbs, gutters, alleys or other such improvements installed on or available to the property. The Storm Property had the highest per acre value of the five sales comparables relied upon by JCA's expert.

Since the Storm Property had been subdivided from a larger property, the court's instruction had the effect of excluding it from consideration by the commission.

In arguing that the commission should not be permitted to consider the Storm Property as a comparable, the City relies on *Department of Highways v. Schulhoff, supra,* which, it says, requires as a matter of law the exclusion of subdivided land in valuing un-subdivided lands. We do not read *Schulhoff* so broadly.

In *Schulhoff,* the state condemned the right-of-way for Interstate 70 near Vail, Colorado. The parcel in question was a portion of a five-acre property zoned for agricultural use. The owner's appraiser appraised the property by creating a hypothetical subdivision, using the sales of improved subdivision lots as comparables, and then totaling the value of the hypothetical lots to determine the value of the whole. That appraisal method was disapproved by the supreme court, and thus, *Schulhoff* stands for the proposition that the creation and valuation of a hypothetical future subdivision is not an acceptable appraisal method.

Also, in *Schulhoff,* the supreme court separately disapproved, as too speculative, evidence of the sales of subdivided building sites in valuing unsubdivided raw land. The basis for exclusion was that the evidence related to retail instead of wholesale sales and the disapproval was premised, in part, on the assumption that a subdivided site would "likely have streets, possibly alleys and curbs and gutters, paved streets, utilities, grading and other matter which are usually in subdivisions...." *Department of Highways v. Schulhoff, supra,* 167 Colo. at 81, 445 P.2d at 407; *see also Herring v. Platte River Power Authority, supra,* (fn.2).

In *Board of County Commissioners v. Vail Associates, Ltd., supra,* the supreme court disapproved of the use of subdivided and developed parcels in valuing raw land except when there was a lack of comparable sales of undeveloped raw land.

In this instance, while the Storm Property had been subdivided and sold off from a larger parcel, it had very few, if any, other characteristics of retail land.

We conclude the instruction given by the trial court prohibiting the commission from considering the Storm Property comparable was error. It was for the commission to determine whether the Storm Property was sufficiently similar to the acquired properties to be considered and what weight, if any, it should be accorded in valuing the subject property.

We recognize that the elimination of one comparable used by an appraiser to establish the market value of property does not otherwise preclude consideration of that expert's opinion. However, in this instance, the excluded comparable was by far the highest sale relied upon by the appraiser, was central to his opinion, and was a focus in the examination and cross-examination of the appraiser.

In addition, the trial court stated, in the presence of the commission, in response to counsel's expressed reservations about the use of the instruction:

The court finds when it gave instruction No. 12 that the—if the commission finds—instruction No. 12 will be given to the commission if the commission finds that the property is not—does not have unique—how would I best describe that?—unique characteristics that must separate the use of the property because of those unique characteristics; in other words, if half of the—not having taken the testimony, I don't know the condition of the property, but if a portion of the property is vertical in nature, high mountainous-type property and the portion—another portion of the property is that portion which was flat and subject to the ordinary use of property, then this instruction should not be given. If the property—if the commission determines that the property was in generally the same character throughout, then this instruction will be the appropriate instruction.

. . . .

In the commissioner's [sic] opinion if they believe that the property in kind is not devisable [sic], then instruction No. 12 applies. If they believe that the instruction—that the property in kind is devisable [sic]; in other words, if it's of a different character, then there may—the instruction does not apply. That's a factual determination that the commission has to decide. I can't decide that. I think the instruction No. 12 set forth the law in Colorado.

The court's statement indicated that the portion of the property taken cannot be valued as a severed parcel without first determining that it cannot be valued as a part of the whole. In our view, this is a misstatement of the law.

While the initial error in giving the instruction may have been harmless, when coupled with the trial court's erroneous statement regarding the use of that instruction, we conclude the error is not harmless. The commission ultimately accepted the opinion of the City's appraiser and gave no weight to the testimony of JCA's appraiser. It is not possible to determine from this record whether this resulted from the instruction, the oral limitation, both, or from other considerations. Reversal is thus required.

## II.

■ As it may be raised on retrial, we address JCA's contention that the commission erred in refusing to strike the testimony of the City's expert as to sales data that he did not personally confirm. We disagree.

Section 38–1–118, C.R.S.1997, provides that a witness giving testimony regarding the value of real property may testify as to sales of other property:

which was examined and utilized by him in arriving at his opinion, if he has personally examined the record and communicated directly and verified the amount of such consideration with either the buyer or seller.

Testimony as to comparable sales that have not been personally confirmed by the witness is hearsay, and its admission is grounds for reversal if the commission's ascertainment of value was based primarily on such testimony. *Denver Urban Renewal Authority v. Hayutin*, 40 Colo.App. 559, 583 P.2d 296 (1978).

Here, the City's expert testified about seven comparable sales used in his appraisal, all of which he had personally verified in compliance with § 38–1–118. The City's expert also testified about three other parcels sold in the vicinity which he had used in an earlier appraisal and which he had not personally verified.

Following the City's expert's testimony, JCA, relying on *Denver Urban Renewal Au-*

*thority v. Hayutin, supra,* moved to strike the testimony in its entirety or, in the alternative, with respect to certain comparables. The commission struck the comparable that was bolstered by the unverified sales but refused further to strike the expert's testimony. The commission opined that *Hayutin* should not be extended to create such a harsh result when the unverified sales were not directly considered by the City's expert in making his appraisal of the acquired property. We agree.

In *Denver Urban Renewal Authority v. Hayutin, supra,* the expert testified that in making his appraisal, he used sixteen comparables, eight of which had been verified by his staff, not by him personally. The court held that, because the expert's opinion was based at least in part on the unverified and inadmissible sales data, his entire testimony must be stricken.

Here, the unverified sales were a part of the City expert's base of knowledge. The expert did not rely upon them in performing his appraisal to the extent that the expert did in *Hayutin,* and did not offer them as direct evidence to support his opinion. Under the circumstances of this case, we conclude that *Hayutin* does not require striking the entire testimony of the City's expert.

We also conclude that the commission ameliorated any impermissible impact that the unverifiable sales may have had on the expert's testimony by striking evidence of the comparable which was supported by the unverified sales. Accordingly, if offered under similar circumstances on remand, the expert's testimony may be admitted to the same extent and manner as it was in the first proceeding.

### III.

We also address JCA's argument that the City's expert did not use a correct method in valuing the partial taking. We disagree.

The issue is the present fair market value of the interest actually being acquired at the time of acquisition, that is, the price that would be paid for that interest by a willing buyer to a willing seller, neither acting under constraint. *Board of Commissioners v. No-*

*ble,* 117 Colo. 77, 184 P.2d 142 (1947). The value must be assessed in light of the most advantageous use to which the property could be applied. *Goldstein v. Denver Urban Renewal Authority,* 192 Colo. 422, 560 P.2d 80 (1977).

According to P. Rohan & M. Reskin, *Nichols on Eminent Domain* § 12.03[1] at 12–13, 14 (3d ed.1996), there are two acceptable methods for appraising a partial taking. The treatise states:

There are basically two means by which 'just compensation' in partial takings is determined. One involves determining the market value of the land taken and then measuring the difference in the value of the remainder before and after the taking. This method presents particular difficulty. There is a split of authority as to whether the 'value of the part taken' is based upon its market value as a severed piece of land or whether it should be taken as a proportion of the whole. If the land taken is considered severed land, the extra value which would have attached had it been considered a portion of the larger tract will be reflected in a diminution in the value of the remainder.

The second method is by far the simpler one. The value of the entire tract is determined just prior to the taking, the value of the remaining tract is evaluated after the taking, and the difference between these two quantities is the amount of compensation due.

Colorado has accepted the first measure of damage in a partial taking. *La Plata Electric Ass'n v. Cummins,* 728 P.2d 696 (Colo.1986)(damages equal the value of the portion taken together with any diminution in the value of the remainder); *Colorado Mountain Properties v. Heineman,* 860 P.2d 1388 (Colo.App.1993). With respect to the acquisition of highway rights-of-way, the first measure of compensation is mandated by statute. Section 38–1–114(2)(c), C.R.S.1997; *see Department of Highways v. Schulhoff, supra.*

In this instance, we are dealing with a partial interest in a portion of a parcel. While the parties declined to stipulate that

there was no damage to the remainder, neither offered any evidence in that regard. Therefore, here the issue is narrowed to the value of the partial interest in the portion taken.

The City's appraiser valued the portion taken as a part of the whole parcel, and JCA's appraiser valued the portion taken as a severed parcel. As an example, assume a landowner owns a section of land with access to a major highway and all services on the west boundary and no road or services on any other boundary. Using the City's approach, or taking it to its logical conclusion, the value of an easement along the west line would be the same as one along the east line, everything else being equal. Using JCA's approach, on the other hand, the value of an easement along the west line might be considerably greater than along the east line. *See* J. Worsham, *Problems Peculiar to a Partial Taking in Condemnation,* Institute on Eminent Domain (1959).

The rule that the portion taken is to be valued as a part of the parcel is designed to protect the landowner. *Department of Transportation v. HP/Meachum Land Ltd. Partnership,* 245 Ill.App.3d 252, 185 Ill.Dec. 351, 614 N.E.2d 485 (1993); *Worsham, supra.*

If this rule is applied to the example, and the easement is acquired along the east boundary of the hypothetical section, remote from the highway and services, then the value of the severed piece which is too small to farm and has no other practicable use may approach zero without concomitant damage to the remaining property.

In arguing for a severed land value, JCA relies in part on *Department of Transportation v. HP/Meachum Land Ltd. Partnership, supra.* There, the state sought to acquire 7.029 acres of a 40.282 acre parcel. The total parcel contained 16.45 acres of undevelopable wetlands of which the state sought to acquire .5 acre. The wetlands had substantially less value than the developable portion and the portion taken was disproportionately developable. The state argued that the unit value of the whole property must first be determined and then that value applied to determine the value of the part taken. The appellate court stated:

> The owner does not seek to value the part of the whole tract taken separately from the remainder of the tract. Rather, it seeks to have the recognizably distinct wetland portions of the tract valued separately from the nonwetland portions, and the property to be taken, which includes both types of land, valued with reference to its specific share of the value of the whole tract.

> . . . .

> When the highest and best use of the property is not uniform throughout the tract in question, an appraiser may testify to the highest and best use for the different portions of the full tract involved. . . . This rule makes sense in light of the purpose of the 'just compensation' provision in the constitutions that ' "[t]he owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." ' . . . In addition, this rule does not conflict with the principle of valuing the portion taken as part of the whole and not as a separate parcel. The valuation of the part taken as part of the whole is designed to provide just compensation to the landowner where the land sought to be taken is of greater value when considered as part of the whole than if considered as a parcel by itself.

*Department of Transportation v. HP/Meachum, supra,* 245 Ill.App.3d at 255–56, 185 Ill.Dec. at 353–54, 614 N.E.2d at 487–88; *see also State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, *on rehearing,* 126 Tex. 604, 89 S.W.2d 979 (1936)(the value of the part taken should be ascertained by considering such portion taken and not as a part of a larger tract).

The circumstances present in *Meachum* are presented here in the acquisition of a portion of one of the individual tracts. That tract (the McKay tract) is 3 miles (east-west) by one-half mile (north-south) and includes both sides of State Highway 72 in its westerly two miles. The City's appraiser reduced the value of the McKay tract from $3,500 to $3,000 an acre because a substantial part of

the property was a drainage area which was substantially lower than State Highway 72. The drainage area, however, lies well north of the easement which is parallel and immediately adjacent to State Highway 72. Indeed, throughout its length, whether on or off the McKay tract, the easement is on the higher ground. It is apparent that, while the City's appraiser did not separately value the drainage area, he perceived it had a substantially lower value than the higher ground adjacent to the highway or, at a minimum, negatively impacted the value of the higher ground wherein the interest was acquired.

■ In our view, the value of the portion taken can be valued as a part of the whole parcel so long as the parcel is sufficiently uniform and that method of valuation is not detrimental to the owner because it does not accurately value the property actually taken at its highest and best use. The determination of whether the parcel is sufficiently uniform to be amenable to having a portion of it so valued, and whether such a valuation method is detrimental to the owner by not valuing the portion taken at its highest and best use, are questions of fact for the fact-finder. Therefore, we hold that evidence of the value of the part taken as a part of the whole is admissible along with other evidence and should be accorded so much weight as it deserves by the fact-finder. *City of Aurora v. Webb, supra.*

### IV.

■ Finally, we reject the City's contention on cross-appeal that it was entitled to costs pursuant to § 13–17–202(1)(a)(II), C.R.S.1997, which imposes costs in a civil action upon a plaintiff who recovers a final judgment less than an earlier rejected settlement offer. That statute does not apply in condemnation proceedings. *City of Westminster v. Hart,* 928 P.2d 758 (Colo.App. 1996).

The judgment of the trial court awarding JCA compensation for the easements is reversed and the cause is remanded for a new trial. The order of the trial court denying payment of the City's costs is affirmed.

STERNBERG, C.J., and JONES, J., concur.