E–470 PUBLIC HIGHWAY AUTHORITY, Plaintiff–Appellant,

v.

455 COMPANY, a Colorado General Partnership, Defendant–Appellee.

No. 97CA2119.

Colorado Court of Appeals, Div. V.

March 4, 1999.

Certiorari Granted Sept. 13, 1999.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, Steven J. Niparko, Denver, Colorado, for Petitioner–Appellant.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Kenneth K. Skogg, Karen L. Brody, Denver, Colorado, for Respondent–Appellee.

Opinion by Judge VOGT.

E–470 Public Highway Authority (the Authority) appeals the judgment entered in condemnation proceedings against property owned by The 455 Company (landowner).

The Authority contends that the trial court's rulings on the parties' motions in limine led to an unjust and excessive condemnation award. We affirm.

In December 1995, the Authority initiated condemnation proceedings to acquire property owned by landowner for use in the construction of Highway E–470. The Authority and landowner subsequently entered into a stipulation for possession of the property, leaving for trial the issue of compensation for the property taken and damages to the remainder of the property, which was to be bisected by the highway.

Before trial, the parties filed various motions in limine to determine what evidence bearing on landowner's damages could be presented to the commissioners.

As pertinent to this appeal, the trial court ruled that the Authority could not present evidence of special benefits to landowner from construction of the highway because the Authority would be assessing landowner for those same benefits through its highway expansion fee. The court also ordered that evidence of an annexation agreement between landowner and Commerce City which reserved a right-of-way for the highway was not admissible as a limitation on future use that would reduce the damages award. Additionally, the court ruled that, in support of landowner's damages claim, landowner's appraiser could testify to the total value of the remaining property by considering separately the highest and best use of the three parcels that would be left after construction of the highway.

At the conclusion of the valuation trial the commissioners awarded landowner $759,000 for the property taken and $297,500 for damages to the residue.

I.

The Authority challenges, on various grounds, the trial court's order prohibiting it from introducing evidence of special benefits to the property that would offset the compensation award. We conclude that the trial court did not err in excluding this evidence.

## A.

Under the Public Highway Authority Law, § 43–4–506(1)(j), C.R.S.1998, the Authority has the power to establish and collect a highway expansion fee (HEF) from owners of property within its boundaries who apply for a building permit for improvements on their property. The Authority contends that the trial court erred in characterizing the HEF as an "assessment" for benefits to the property owners and, based on that characterization, precluding the Authority from presenting evidence of special benefits that would offset the damage to the remainder of landowner's property. We disagree.

The Fifth Amendment and Colo. Const. art. II, § 15, prohibit the taking of private property for public use without just compensation.

When a portion of a landowner's property is taken for public use, just compensation includes payment for the portion actually taken and compensation for injury to the remainder of the property. As to the latter, the landowner is entitled to recover all damages that are the natural, necessary, and reasonable result of the taking, as measured by the reduction in the market value of the remainder of the property, and is entitled to present any relevant evidence concerning diminution of market value caused by the taking. *La Plata Electric Ass'n v. Cummins*, 728 P.2d 696 (Colo.1986).

In situations in which the taking is for the purpose of highway acquisition, compensation for a partial taking consists of the value of the property taken and any damages to the residue, "reduced by the amount of any special benefits which result from the improvement or project, but not to exceed fifty percent of the total amount of compensation to be paid for the property actually taken." Section 38–1–114(2)(d), C.R.S.1998.

"Special benefits" which may be set off against damages are those which accrue directly to the residue as a result of the construction of the improvement and which directly and particularly benefit that residue, as opposed to benefitting the public generally. *Western Slope Gas Co. v. Lake Eldora Corp.*, 32 Colo.App. 293, 512 P.2d 641 (1973).

Although special benefits to the remainder may generally be set off against a condemnation award, there can be no offset where the remaining property is subject to an assessment for those same benefits. *See generally* 3 J. Sackman, *Nichols on Eminent Domain* § 8A.06 (rev.3d ed.1998); *see also Oro Loma Sanitary District v. Valley*, 86 Cal.App.2d 875, 195 P.2d 913 (1948); *City of Detroit v. Loula*, 227 Mich. 189, 198 N.W. 837 (1924); *City of St. Louis Park v. Engell*, 283 Minn. 309, 168 N.W.2d 3 (1969).

The purpose of this rule is to avoid the inequity of forcing the condemnee to pay twice for the same benefits, which would in effect constitute double taxation and would deny the condemnee its constitutionally guaranteed just compensation. *See Oro Loma Sanitary District, supra; City of St. Louis Park v. Engell, supra; see also San Luis Valley Irrigation District v. Noffsinger*, 85 Colo. 202, 274 P. 827 (1929)(noting in dictum that where assessments are made according to benefits to the property, offsetting such benefits against damage award would be a double charge).

Here, the Authority's appraiser had determined that landowner would enjoy special benefits valued at $597,000 based on the proximity of its property to the highway and the interchanges. Landowner moved to exclude evidence of such benefits, asserting that the HEF it would have to pay to obtain a building permit was likewise based on the relative benefits that property owners received from the highway and thus amounted to a charge for the same benefits the Authority sought to offset from its condemnation award.

The trial court agreed. It found that the HEF was a "special assessment" within the meaning of *Bloom v. City of Fort Collins*, 784 P.2d 304 (Colo.1989), in that it was based on future benefits to landowner's property resulting from the highway, and ordered that the Authority could not present evidence of benefits from the highway construction for the purpose of deducting the value of such benefits from the amount of landowner's compensation.

■ On appeal, the Authority contends that the general principle precluding condemning authorities from charging twice for the same benefits has no applicability here because the HEF is not a "special assessment" as defined in *Bloom*. However, contrary to the Authority's argument, we agree with landowner that whether the HEF meets the *Bloom* definition of "special assessment" is not dispositive of the applicability of the rule against charging twice for the same benefits.

The issue in *Bloom* was whether a transportation utility fee imposed on property owners in Fort Collins was a property tax subject to constitutional uniformity requirements or a special fee. In concluding that it was the latter, the supreme court distinguished special assessments from property taxes and other methods of generating revenue. It determined that the transportation utility fee could not be a special assessment because there was no requirement that the amount of the fee be used to pay for improvements benefitting the particular properties on which the fee was imposed; rather, the fee would be used to maintain the network of city streets generally.

*Bloom* was a tax case, not an eminent domain case. In *City of Englewood v. Weist*, 184 Colo. 325, 520 P.2d 120 (1974), the supreme court observed that the power of eminent domain is separate and distinct from the power of taxation and that the two powers are governed by different underlying principles.

Moreover, the purpose of the rule at issue here is to avoid compelling a condemnee to pay twice for the same benefits. Thus, in determining whether that rule applies, the focus should be on what the condemnee is actually paying for, rather than how the revenue generating device is labelled or characterized.

As discussed below, in this case there was evidence before the trial court that landowner would be paying for the benefit of being near Highway E–470 and its interchanges when it paid the HEF. Thus, regardless of whether the HEF was a "special assessment" under *Bloom* and regardless of whether the Authority's power to impose the HEF under § 43–4–506(1)(j) was a power to "assess," it was not an abuse of discretion for the court to preclude the Authority from introducing evidence of the same benefit to offset the condemnation award.

B.

■ The Authority also challenges the evidentiary basis for the trial court's determination that the HEF was "benefits-based." It asserts that that determination was based on a 1990 HEF collection manual which was never admitted into evidence and which had been twice superseded. Additionally, the Authority argues that the court should have held an evidentiary hearing, at which it would have shown the uses to which HEF funds were put and would have established that the HEF would not bring any special benefits to properties on which it was imposed. We are unpersuaded.

Initially, we disagree with the Authority's contention that the trial court could not consider the 1990 manual because it had not been admitted into evidence.

*Wilson v. U.S. Fidelity & Guaranty Co.*, 633 P.2d 493 (Colo.App.1981), on which the Authority relies in support of its contention, addressed the evidentiary basis required for findings made by a trial court as factfinder at trial.

Here, by contrast, the court was ruling on motions in limine prior to trial. Under CRE 104(a), preliminary questions concerning the admissibility of evidence are to be determined by the court, and the court is not bound by the rules of evidence except those with respect to privileges. Similarly, C.R.C.P. 121 § 1–15(2) requires that affidavits and "any documentary evidence" offered in support of a motion be served on other parties, but does not require that such documents first be admitted into evidence. *See also* Committee Comment to C.R.C.P. 121, noting that the rule sets forth requirements for "filing of matters not already of record necessary to determination of motions."

There was thus no requirement that the manual which in any event appears to have first been brought to the court's attention by

the Authority, not landowner be admitted into evidence before the court could consider it.

■ Further, under C.R.C.P. 121 § 1–15(4), it was within the court's discretion to decide whether an evidentiary hearing on the motions in limine was required. The Authority did not request a hearing in its response to landowner's motion in limine, but did so only after the court had ruled in a related case that evidence of special benefits to that landowner would not be admitted. In these circumstances, it was not an abuse of discretion to decline to hold an evidentiary hearing. *See In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997)(court was under no obligation to conduct a hearing *sua sponte* in absence of a timely request).

■ Finally, even though the 1990 manual had been superseded, there was evidentiary support for the court's ruling that the HEF was "benefits-based."

Among the materials attached to landowner's motion in limine were public statements issued by the Authority prior to 1990 which assured the public that the highway would be paid for by those who benefitted from it.

A 1990 resolution of the Authority's board of directors stated that HEF levels "reflect the impact of specific properties upon the E–470 highway, and the relative benefit received by specific properties from the E–470 Highway, ... and for non-residential, the proximity of such properties from an E–470 interchange," and that the HEF fees to be collected pursuant to the resolution were "reasonably related to the benefits bestowed by the E–470 Highway upon such properties." The "collection methodology" section of the 1990 manual, on which the trial court relied, likewise indicated that the HEF was based on benefits to the affected properties.

The Authority pointed out to the trial court that the collection methodology chapter had been omitted from the 1996 version of its collection manual, and that its board of directors had passed a later resolution rescinding some of the above-referenced language in its initial 1990 resolution. The court found "unpersuasive" the Authority's argument that this evidenced a change in the basis for the HEF.

There was support in the record for this conclusion. The Authority's director of real property and special services testified at his 1997 deposition that all that had really changed in the collection methodology since 1990 was that there was an across-the-board increase in the amount of the HEF in 1995. Further, although the 1996 manual omitted the collection methodology section from the 1990 manual, it did not replace the 1990 formula with a non-benefits-based methodology.

In sum, the evidence established, as the trial court found, that the HEF was initially based primarily on benefit to the affected properties and continued to be "benefit-based" notwithstanding revisions to the collection manual and the later resolution by the Authority's board of directors. Accordingly, the court's determination of this issue will not be disturbed on appeal. *See Coors Brewing Co. v. Fagan,* 949 P.2d 110 (Colo.App. 1997).

C.

■ We likewise reject the Authority's related argument that, even if the HEF was a special assessment, it should have been permitted to present evidence of special benefits in an amount exceeding the HEF. The Authority did not make an offer of proof or even represent to the trial court that any such evidence in fact existed. Indeed, its only reference to this argument in the trial court appears in a footnote in which the Authority alluded to the issue but characterized its reference to authorities addressing the issue as "not of importance for purposes of this Motion."

Further, since the amount of the HEF was not known as of the date of the taking, such evidence would necessarily have been speculative. *See Ruth v. Department of Highways,* 145 Colo. 546, 359 P.2d 1033 (1961)(information that is speculative as of the date of taking may not be considered in eminent domain proceedings).

## II.

■ The Authority next argues that the trial court's exclusion of evidence of landowner's annexation agreement with Commerce City was error because the reservation of a highway right-of-way in that agreement was a limitation on future use of the property that was relevant to the determination of landowner's damages. We do not agree.

■ Generally, evidence of a reservation or encumbrance which diminishes a property's value is admissible in a condemnation proceeding as relevant to the property's fair market value. *City of Englewood v. Reffel,* 173 Colo. 203, 477 P.2d 361 (1970).

However, in determining the value of land taken, consideration of factors arising from the very fact of condemnation is improper. Thus, where the reservation is a reservation for the particular public improvement in question, the condemning authority may not use that fact to reduce the compensation due the landowner. *See State Department of Highways v. Copper Mountain, Inc.,* 624 P.2d 936 (Colo.App.1981)(fact that land had been reserved based on possibility of highway condemnation was not to be considered in valuation proceeding); *Board of County Commissioners v. HAD Enterprises, Inc.,* 35 Colo.App. 162, 533 P.2d 45 (1975) (approving instruction to commissioners to value lessee's property interest as if no condemnation had taken or was to take place).

Here, landowner and Commerce City entered into an annexation agreement in 1989 which provided that landowner's property would be annexed to Commerce City but that a right-of-way for the highway would "be reserved for acquisition through condemnation by the E–470 Authority . . . or the City." The reservation was for the same public improvement Highway E–470 for which this condemnation proceeding was instituted. It made a portion of landowner's property unavailable for development, but contemplated that there would be compensation for that limitation in the condemnation award. The reservation could not be used to reduce the amount of compensation due landowner. Thus, the trial court did not err in excluding evidence of the reservation.

## III.

■ Finally, the Authority contends that the trial court erred in allowing landowner's appraiser to testify that he calculated the damages to landowner's remaining property by separately valuing the three parcels in the remainder according to their diminished highest and best use and then subtracting the total from the pre-condemnation value of the same remainder. According to the Authority, use of this approach artificially reduced the value of landowner's post-condemnation remainder and thus artificially increased its claimed damages. Again, we disagree.

■ In determining the value of property in condemnation proceedings, the commissioners are to consider evidence of the most advantageous use to which the property may reasonably be applied. *Goldstein v. Denver Urban Renewal Authority,* 192 Colo. 422, 560 P.2d 80 (1977). Opinion evidence as to value requires that the unique and different characteristics of individual pieces of property be analyzed. *Denver Urban Renewal Authority v. Berglund–Cherne Co.,* 193 Colo. 562, 568 P.2d 478 (1977).

When the highest and best use of property is not uniform throughout a tract in question, courts in other jurisdictions have permitted appraisers to testify to the highest and best use for the different portions of the full tract involved for purposes of determining just compensation. *See Department of Transportation v. H.P./Meachum Land Ltd. Partnership,* 245 Ill.App.3d 252, 185 Ill.Dec. 351, 614 N.E.2d 485 (1993); *Oughton v. Gaddis,* 683 So.2d 390 (Miss.1996); *City of Dallas v. Rash,* 375 S.W.2d 502 (Tex.Civ.App.1964); *see also United States v. 1,629.6 Acres of Land,* 360 F.Supp. 147 (D.Del.1973) (upholding valuation based on testimony attributing different highest and best uses to two separate portions of condemned parcel), *aff'd in part, rev'd in part on other grounds,* 503 F.2d 764 (3d Cir.1974); *124 Ferry St. Realty Corp. v. State,* 48 A.D.2d 959, 369 N.Y.S.2d 224 (1975)(assignment of different values to separate segments of parcel was a proper method of valuation).

In *City of Westminster v. Jefferson Center Associates*, 958 P.2d 495 (Colo.App.1997), a division of this court relied on *Department of Transportation v. HP/Meachum Land Ltd. Partnership, supra,* in approving the valuation of a portion of land taken for an easement. In its reply brief, the Authority argues that *City of Westminster* requires that the commissioners, as the triers of fact, rather than the court, determine whether the highest and best uses of the parcels were sufficiently different to allow them to be considered separately. However, because the Authority did not raise this in the trial court, or even in its opening brief on appeal, we do not reach the issue. *See Estate of Stevenson v. Hollywood Bar and Café, Inc.,* 832 P.2d 718 (Colo.1992); *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

The Authority argues that *Department of Highways v. Schulhoff,* 167 Colo. 72, 445 P.2d 402 (1968), and *Board of County Commissioners v. Vail Associates, Ltd.,* 171 Colo. 381, 468 P.2d 842 (1970), prohibit valuing undeveloped property by considering the aggregate values of individual plots into which the property could be divided. However, in those cases, property had been hypothetically carved up into building sites or use areas; then, a precondemnation value was estimated for each site, and the estimated values were added together. Here, by contrast, landowner's appraiser did not artificially carve up the property. Rather, the condemnation itself resulted in division of the original tract into three parcels, which had different characteristics based on location, shape, and proximity to the highway and other roads. The appraiser determined that the three parcels were affected in different ways by the highway, and that, as a result, the three now had different highest and best uses.

We conclude that the appraiser was entitled to consider the differing highest and best uses of the three tracts in determining the postcondemnation value of the property as a whole and that *Department of Highways v. Schulhoff, supra,* and *Board of County*

*Commissioners v. Vail Associates, Ltd., supra,* do not require a contrary conclusion.

Accordingly, the trial court did not err in permitting landowner's appraiser to testify to the total value of the property by considering the highest and best use of each of the three separate parcels.

IV.

In a conditional cross-appeal, landowner asks that, if this court decides in the Authority's favor on its appeal and remands for a new trial, it reverse the trial court's determination that landowner did not suffer a substantial impairment of access as a result of the taking. Because we are affirming on the issues raised in the Authority's appeal, we do not reach the cross-appeal.

The judgment is affirmed.

Judge DAVIDSON and Judge BRIGGS concur.