## No. C-928

**Gilbert Goldstein, Trustee v. Denver Urban Renewal Authority, a Body Corporate and Politic of the State of Colorado**

(560 P.2d 80)

Decided February 7, 1977.                    Rehearing denied March 7, 1977.

Hoffman, Goldstein, Armour & Lonnquist, Gilbert Goldstein, for petitioner.

John H. Williamson, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review *Denver Urban Renewal Authority v. Goldstein*, 37 Colo. App. 244, 548 P.2d 930 (1975), which set aside a certificate of ascertainment and assessment and ordered a new trial. We reverse.

Denver Urban Renewal Authority (DURA) filed an action in eminent domain to obtain title to real property owned by petitioner Goldstein. The parties stipulated to a value of $22,000 for the improvements on the

property. Trial was held before a commission of three freeholders, pursuant to section 38-1-101 and 38-1-105, C.R.S. 1973.

█ It is undisputed that the highest and best use for this property at the time of the hearing was as undeveloped real estate and the evidence of comparable sales was a proper consideration for the commission.[1] One of Goldstein's expert witnesses testified as to certain comparable sales. In making adjustments to achieve comparability, the expert witness added the cost of demolishing certain existing structures on the "comparable" land to the purchase price to arrive at the "true market price" for the comparable property as *unimproved* real estate.

DURA objected to the. consideration of demolition costs in the method of valuation and to the use of hearsay evidence regarding the cost of demolition. DURA also objected to the commission's refusal to permit cross-examination of an expert witness regarding testimony given in an unrelated case. Rulings by the commission with respect to these objections were asserted as errors on appeal.[2]

The court of appeals concluded that (1) the condemnee had laid an insufficient foundation for admission of expert testimony as to market value based upon comparable sales, (2) the commission had erroneously admitted hearsay testimony regarding demolition costs, and (3) the commission unduly restricted DURA's cross-examination of the expert witness for the condemnee. Viewing the errors to be "so highly prejudicial as to require a new trial," the court of appeals reversed. *Denver Urban Renewal Authority v. Goldstein, supra.*

## I.

### Measure of Damages

█ The role of the commission is to ascertain the present, reasonable market value of the condemned property. The fundamental test for arriving at this determination is:

"'Reasonable market value' means the fair, actual cash market value of the property. It is the price the property could have been sold for on the

---

[1] It is well established in Colorado that sales of comparable properties are relevant evidence to either show fair market value directly or to establish the basis for expert opinion of fair market value. *See Wassenich v. City of Denver,* 67 Colo. 456, 186 P. 533 (1919); *Loloff v. Sterling,* 31 Colo. 102, 71 P. 1113 (1903).

[2] The rulings of the commission with respect to the "demolition cost" appraisal technique were not brought to the attention of the trial court until a motion for a new trial was filed. However, review by the court of evidentiary rulings by the commission during the course of the compensation hearing was not intended to be the norm. *See Board of County Commissioners v. Vail Associates,* 171 Colo. 381, 468 P.2d 842 (1970) ("It was not the intent of the statute that the judge of the court should preside over the commission proceedings in the same manner as he is required to do in a jury trial.") Moreover, the statutes only provide for judicial review of such rulings during the course of the hearing when *the commission* "request[s] the court to make ruling upon the propriety of the proof or objections of the parties." Section 38-1-105(2), C.R.S. 1973. Accordingly, the issue has been preserved for appeal.

open market, for cash, under the usual and ordinary circumstances where the owner was willing to sell and the purchaser was willing to buy, but neither was under an obligation to do so."

*Colorado Jury Instructions* (Civil) 26:3; *accord, Department of Highways v. Schuloff,* 167 Colo. 72, 445 P.2d 402 (1972). The present market value must be assessed in light of the "most advantageous use to which the property may reasonably be applied." *Stark v. Poudre School District,* 192 Colo. 396, 560 P.2d 77, *quoting Department of Highways v. Schuloff, supra.*

DURA contends that while comparable sales of unimproved real estate are clearly relevant evidence for presentation to the commission, an expert may not "invent" a comparable sale by using the sale of *improved* property and then adding to the purchase price the cost of demolition of existing improvements in order to arrive at the "true market value" of the comparable property as *unimproved* property. We disagree.[3]

The commission is entitled to consider any competent evidence, apart from certain factors arising from the very fact of condemnation, which would be considered by a prospective seller or buyer as tending to affect the present market value of the land. *Compare Montgomery Ward & Co. v. City of Sterling,* 185 Colo. 238, 523 P.2d 465 (1974) (fair rental value admissible when higher than contract rental value); *Board of County Commissioners v. Vail Associates, Ltd.,* 171 Colo. 381, 468 P.2d 842 (1970); *Denver Joint Stock Land Bank v. Board of Commissioners,* 105 Colo. 366, 98 P.2d 283 (1940); and *Colorado M. Ry. v. Brown,* 15 Colo. 193, 25 P. 87 (1890), *with Board of Water Commissioners v. Smith,* 152 Colo. 227, 381 P.2d 269 (1963) (increment of value due to fact of condemnation held irrelevant); *Williams v. City of Denver,* 147 Colo. 195, 363 P.2d 171 (1961) (enhanced property value and zoning change due to fact of condemnation held irrelevant).

A prospective buyer who contemplates the purchase of improved land for use in an undeveloped state would discount the purchase price of the land in a developed state by the cost of demolishing any improvements on the land.[4] Accordingly, in determining the present market value of un-

---

[3] Both parties rely upon a court of appeals' opinion which was not selected for official publication. C.A.R. 35(f) provides that "[o]nly the opinions officially selected for publication shall be binding upon the trial judges of the state of Colorado and shall be considered as stare decisis for the point of law settled therein . . . ." In light of this rule, we decline to consider the analysis of that case as applied to the issues presented here.

[4] When existing structures constitute a liability to the owner of a parcel of land, it is clear that this factor may be considered in actions in eminent domain. *See State v. Schutte Investment Co.,* 334 S.W.2d 241 (Mo. 1960) (demolition costs for uninhabitable buildings held admissible); 4 *J. Sackman, Nichols' Law of Eminent Domain* § 13.11 at n. 14 (1976) ("[w]here a building is old and has been declared uninhabitable by the municipal authorities, consideration may be given to its depreciating effect upon the value of the land."); *see also* Mandelker, *Housing Codes, Building Demolition, and Just Compensation: A Rationale for the Exercise of Public Powers Over Slum Housing,* 67 Mich. L. Rev. 635, 663 (1969). Comparisons between improved and unimproved properties for eminent domain purposes are proper where relevant. *See, e.g., Buena Vista Park School District v. Metrim Corp.,* 176 Cal.App.2d 255, 1 Cal.Rptr. 250 (1959).

improved property, as reflected by a comparable sale, the addition of demolition costs to the purchase price of a comparable property which had improvements but which *was purchased for use as undeveloped land* is permissible.

▪ The court of appeals developed an explicit test to measure the foundation for this type of evidence. *See Denver Urban Renewal Authority v. Goldstein,* 37 Colo. App. 244, 548 P.2d 930 (1975). We decline to adopt a strictly-defined foundation requirement. The root consideration is whether the comparable sale was sufficiently "similar," in one or more aspects, to be probative of the fair market value of the property under consideration by the commission. As we said in *Wassenich v. City of Denver,* 67 Colo. 457, 186 P. 533 (1919):

"All business property in a general section, or all residence property in a general locality is similar in the sense in which the word is here used, though each parcel may possess many points of difference. Similarity does not mean identical, but having a resemblance. *No general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible.* It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused. The court must determine the question before admitting the evidence, and after it is admitted, the opposite party may show to the jury that the circumstances are such as to render it of little or no value. In determining the weight of such evidence, the jury may consider the time of the sale, the amount of land, and any and all differences, facts or circumstances affecting the value of such evidence." (Emphasis added.)

*Accord, Dandrea v. Board of Commissioners,* 144 Colo. 343, 356 P.2d 893 (1960) (noting distinction between measure of damages and evidence admissible to show damages or opinion as to value); 1 *L. Orgel, Valuation Under the Law of Eminent Domain* § 138 (1953); 4 *J. Sackman, Nichols' Law of Eminent Domain* § 12.311 (1976).

There was expert testimony before the commission that in each case the actual demolition costs were "reasonable." As to whether the purchaser of the comparable property discounted the purchase price by the cost of the demolition, the commission heard testimony as to the nature of the improvements, the ultimate use of the land, and the proximity of the

time of demolition to the date of purchase. From these, the commission could evaluate the utility of the "purchase price plus demolition cost" appraisal technique in light of the validity of the particular transaction as a true comparable.

The evidence was not irrelevant as a matter of law and, therefore, its admission was within the discretion of the commission. The weight to be accorded such evidence, once admitted, also lies within the discretion of the commission. *See Wassenich v. City of Denver, supra.*

## II.
### *Hearsay Evidence of Demolition Costs*

■ DURA also contends that it was error to allow a witness to testify to demolition costs as reported to him by others. The commission, however, reserved ruling on this hearsay objection. *See* section 38-1-105(2), C.R.S. 1973. Our review of the record indicates that DURA did not renew its hearsay objection, move to strike the testimony, or insist on a ruling on its prior objection. Accordingly, the objection was waived. *See, e.g., United States v. Ward Baking Co.*, 224 F.Supp. 66, 74 (E.D. Pa. 1963) (if judge reserves decision on ruling it is counsel's "responsibility to raise the point again at the close of all evidence if no ruling was, in fact made"); *see also Colorado Springs & Interurban Ry. v. Reese*, 69 Colo. 1, 169 P. 572 (1917) ("Counsel are officers of the court, and are charged with the duty of guarding it against errors at the trial, and when they acquiesce in the admission of evidence, may not be permitted, after verdict, to claim that such evidence was improperly admitted to the prejudice of their client.")

As the record now stands, there was no evidentiary ruling for the trial court or this court to review. It is presumed that the commission based its determination on competent evidence. *See Haver v. Motonock*, 75 Colo. 301, 255 P. 834 (1924).

## III.
### *Scope of Cross-Examination*

■ A key issue at trial was the rate of appreciation of land values in the area. The condemnee's expert testified to a rate of increase of 8% - 12% per year. On cross-examination, the witness conceded that he had testified to a lower rate in an unrelated case involving property in the same area. Counsel for DURA then asked the witness to "update" a certain comparable sale by recomputing the value based on the lower rate figures. The commission sustained an objection to the question, stating:

"I think the objection is good. I will sustain it. That doesn't preclude your pointing out in your [argument] what the difference would be, but I think it improper to ask the witness to perform the mathematical computation with which he doesn't agree when you can do it as well as he."

DURA's contention that it was prejudicial error to sustain the objection is without merit. All the facts were before the commission. The effect

of a different rate of appreciation was subject to a simple mathematical computation and could have been argued by counsel. Moreover, DURA examined its own witnesses on this very point.

Finding no reversible error in the proceedings of the commission, we reverse and remand to the court of appeals with directions to affirm the determination of the commission.[5]

MR. CHIEF JUSTICE PRINGLE does not participate.

---

[5] We agree with the court of appeals regarding the admissibility of the property owner's testimony. *See Denver Urban Renewal Authority v. Goldstein*, 37 Colo. App. 244, 548 P.2d 930. (1975).