**CREEKSIDE AT DTC, LTD., a Colorado limited partnership, Petitioner–Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS, STATE OF COLORADO and Arapahoe County Board of Equalization, Respondents–Appellees.**

No. 90CA0258.

Colorado Court of Appeals, Div. I.

March 14, 1991.

Rehearing Denied April 11, 1991.

Calkins, Kramer, Grimshaw & Harring, David T. Wexler, Denver, for petitioner-appellant.

Peter Lawrence Vana, III, County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for respondents-appellees.

Opinion by Judge CRISWELL.

The petitioner, Creekside at DTC, Ltd., which owns an improved parcel of ground in Arapahoe County, seeks review of an order of the Board of Assessment Appeals (BAA) that approved the evaluation for assessment purposes adopted by the county assessor for that property. We affirm.

Petitioner's land contains approximately 132,000 square feet upon which are located six, one-story office buildings. These six buildings collectively contain about 41,600 square feet of rentable space and one contains an unfinished basement with an additional 6200 square feet.

The property is situated in Greenwood Village and is within the boundaries of the Denver Technological Center (DTC). While the existing buildings contain less than 50,-000 square feet, the applicable zoning ordinance would authorize the construction of improvements having a maximum of approximately 158,700 square feet.

Section 39–5–105(1), C.R.S. (1982 Repl. Vol. 16B) requires the county assessor to appraise and value improvements "separately from land." The assessor has interpreted this statute to require that land underlying an improvement be appraised as if the land were vacant. Likewise, he concluded that the value of any existing improvements was to be determined without regard to the land upon which it existed. Then, the two values, independently determined, were to be added together in order to arrive at the appropriate overall evaluation for assessment purposes of the entire

property. Petitioner does not challenge this interpretation of the statute, and accordingly, we will not address its propriety in this appeal.

The BAA concluded that petitioner's evidence did not establish that the assessor had incorrectly evaluated petitioner's property. Hence, it affirmed the assessor's actions.

Petitioner asserts that the BAA erroneously (1) relied upon sales of other properties that were not comparable to petitioner's, (2) failed to give "appropriate" consideration to the income approach to value, and (3) considered the unfinished basement as having the same value as fully rentable space. We conclude that these complaints are unjustified.

## I.

Petitioner argues that the BAA improperly considered two series of sales of other properties that were not, as a matter of law, sufficiently comparable to the subject property as to be relevant to the proper valuation of petitioner's property. We disagree.

■ Petitioner claims, first, that it was improper for the assessor and the BAA to consider sales of vacant land in determining the value of its land upon which improvements had been erected.

However, petitioner has not contested the assessor's claim that § 39–5–105(1) requires that land with improvements be "separately" evaluated as if it were vacant. Given this uncontested interpretation of the statute, a comparison of petitioner's land with vacant land was not inappropriate.

■ Further, we also conclude, contrary to petitioner's assertions, that the BAA did not err in considering the sales of other improved properties in determining the value of the subject improvements. While these other sales were outside the DTC development, and while they had other characteristics somewhat different from the petitioner's improvements, we are convinced that they possessed some relevance to the issue of the value of the subject improvements.

For the purpose of eminent domain proceedings, we have said that:

"Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest in the sound discretion of the trial court which will not be interfered with unless abused."

*State Department of Highways v. Town of Silverthorne*, 707 P.2d 1017 (Colo.App. 1985). *See also Goldstein v. Denver Urban Renewal Authority*, 192 Colo. 422, 560 P.2d 80 (1977); *Wassenich v. City & County of Denver*, 67 Colo. 456, 186 P. 533 (1919).

We apply the same rule if, as here, a specialized administrative agency is required to act both as the determiner of admissibility of evidence and as the fact finder. So long as the proffered sales have sufficient common characteristics to possess some relevancy upon the issue of value, that agency should be allowed to consider them and to place such weight upon that relevance as its specialized judgment may dictate.

Here, all of the alleged comparable properties were within the general vicinity of petitioner's property, contained improvements of the same general nature, and were used for similar purposes. Whether the fact that those other improvements were generally larger and constructed of different materials made these properties not significantly indicative of the subject's value was a matter affecting the weight of this evidence, not its admissibility. *State Department of Highways v. Town of Silverthorne, supra.*

Hence, we conclude that the BAA did not abuse its discretion in allowing evidence of the sales prices of these other properties.

## II.

■ We also reject petitioner's argument that the assessor failed to comply with Colo. Const. art. X, § 3(1)(a), and § 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.).

The constitutional provision requires that the assessor determine the "actual value" of real property by giving "appropriate consideration [to the] cost approach, market approach, and income approach to appraisal." And, § 39-1-103(5)(a) repeats and implements this requirement. In addition, the statute requires the assessor to "document all elements of [the three] approaches that are applicable, prior to a determination of actual value."

While we have recognized that, as a general rule, the method by which valuation for taxation purposes is to be formulated is not a judicial function, this court may, nevertheless, review an assessor's evaluation actions to determine whether the assessor has complied with pertinent constitutional and statutory requirements. *Leavell–Rio Grande Central Associates v. Board of Assessment Appeals*, 753 P.2d 797 (Colo.App.1988); *Salt River Project Agricultural Improvement & Power District v. Board of Assessment Appeals*, 719 P.2d 368 (Colo.App.1986).

In noting the requirement that "appropriate consideration" be given to each of the three methods of appraisal, it has been recognized that the nature of the property being appraised may itself rule out consideration of one or more of these approaches. *See Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27 (Colo.1990) (fn. 8, 9 and 12). Likewise, there may exist instances in which there is insufficient data so as to allow all of the approaches to be used. *See Leavell–Rio Grande Central Associates v. Board of Assessment Appeals, supra; Montrose Properties, Inc. v. Board of Assessment Appeals*, 738 P.2d 396 (Colo.App.1987). *But see Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra.*

However, if the nature of the property permits application of each of the three methods of appraisal, and if there exist sufficient data to permit all of the necessary comparisons and computations to be made, the constitution requires the assessor to *compute* the value of the property that would result from the use of each of the three methods, or such of them as the circumstances will permit. *See Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra.*

Having thus "considered" each method, however, the assessor may then exercise professional judgment and discretion to determine which of the three methods, or any combination thereof, results in the most accurate determination of the property's "actual value." And, in the event of any appeal from that determination, it becomes the responsibility of the trier of fact, here the BAA, to determine whether the assessor's determination was "appropriate" or arbitrary.

Here, we conclude that the assessor's methodology complied with the constitutional requirement.

Unlike the assessor in *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra*, who failed to compute the value of the property by using either the income approach or the market approach, the assessor here computed the values resulting from the use of all three approaches. Further, the testimony disclosed the value that the assessor achieved by considering each approach.

Having engaged in these three computations, however, the assessor adopted a value for the improvements that placed principal reliance upon the cost approach and the market approach. The income approach was not relied upon because, according to the assessor's evidence, the sale prices of properties in the vicinity were not being substantially influenced by the level of the present income of those properties.

Hence, the record supports the BAA's conclusion that the approach adopted by the assessor was a reasonable one, and one that was "appropriate" under the circumstances.

### III.

The record does not support petitioner's contention that the assessor and the BAA evaluated the unfinished basement space on the same basis as the rentable space in the building.

The assessor's written report reflects that the unfinished space was evaluated at about ⅓ of the value placed on the building's rentable space. In addition, the testimony before the BAA was that the basement was evaluated by the assessor as warehouse space—an improvement with "real minimal finish."

Hence, the evaluation adopted by the BAA did not treat this basement space as rentable space, and the record supports the evaluation placed upon it.

Order affirmed.

PIERCE, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent as to Part II of the majority opinion.

For property tax valuation purposes, actual value is defined as "that value determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal." Section 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.); Colo. Const. art. X, § 3(1)(a).

The majority determines that this requirement is met if the assessor makes a valuation based on the income approach even if, as here, the valuation is not ultimately used in determining the actual value of the property. The majority further determines that the income approach can be rejected if the assessor determines it is not relevant to determining the actual value. Here, the income approach was not used by the assessor because he believed that the sales price of other properties in the vicinity of this property was not substantially influenced by the income from those properties.

After reviewing this record, I believe that the Board of Assessment Appeals (BAA) abused its discretion in accepting the assessor's valuation which did not factor in the income approach in determining actual value. I conclude the quality and quantity of evidence relied upon by the assessor to justify excluding consideration of the income approach in determining actual value here was inadequate to sustain his decision.

In *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27 (Colo.1990), the court determined that in certain cases one or more of the three approaches, *i.e.*, market, income, cost, might not be applicable in a particular case. In regard, however, to the income approach, the *Sonnenberg* court in fn. 8 stated:

"The income approach is a common method for calculating the value of commercial properties, especially apartment buildings, *office buildings* and shopping centers. It generally involves calculating the income stream (rent) the property is capable of generating, capitalized to value at a rate typical within the relevant market." (emphasis added)

Since the sales price, or market value of most office buildings largely depends on the building's income, tax valuations of office buildings should typically include the income approach in determining the property's actual value for tax purposes. *See Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra.* Here, based upon a limited familiarity with a few sales, the assessor indicated that since income was not a significant factor in the sales price of those few office buildings, it could not be considered.

Since the record does not establish that the assessor had made an in depth, broad-based evaluation of other similar transactions, I do not believe there is a sufficient evidentiary basis to support the decision to entirely exclude consideration of the income approach in determining actual value.

Underlying the requirement that an assessor should give appropriate consideration to the income approach is the belief that such approach recognizes the property owner's actual economic situation in relationship to the property. The income approach also gives some deference to the property owner's right to develop and use the property as he, not the assessor, determines.

I am also concerned that the aesthetic and environmental considerations which

may underlie an owner's development and use of his commercial property may be undercut if the income approach is not considered in determining the actual value of the property. The exclusion of the income approach in evaluating this property effectively punishes the owner for such aesthetic and environmental use of his property.

I am not, of course, suggesting that the income approach should be the exclusive basis for determining actual value in regard to office buildings. I do believe, however, that in virtually all instances involving the taxation of office buildings that the income approach should be a part of the analysis of the assessor in determining actual value.

In my view, the evidence here is insufficient to justify the board's total exclusion of the income approach to this property. Thus, I would reverse the order of the BAA and would remand for a valuation premised, at least partially, on the income approach.