E–470 PUBLIC HIGHWAY AUTHORITY,
Petitioner–Appellee

v.

Steven A. REVENIG, Trustee, Successor Trustee to Stephen A. Hellerstein; and Howard L. Farkas, Respondents–Appellants.

No. 03SA356.

Supreme Court of Colorado,
En Banc.

June 14, 2004.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Special Counsel, Denver, Colorado, Attorneys for Petitioner–Appellee.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Opperman & Schell, P.C., William M. Schell, Julie A. Rech, Denver, Colorado, Attorneys for Respondents–Appellants.

Ken Salazar, Attorney General, Larry D. Tannenbaum, Senior Assistant Attorney General, Michael R. McCormick, Assistant Attorney General, Denver, Colorado, Attorneys for Amicus Curiae State of Colorado.

Justice BENDER delivered the Opinion of the Court.

## INTRODUCTION

In this appeal, we review the trial court's decision upholding the constitutionality of a takings compensation statute that requires a trial court to reduce by up to fifty percent an award of compensation for property taken in highway acquisitions by the amount of special benefits to the landowner's remaining property. We affirm.

As part of the E–470 highway project, respondent E–470 Public Highway Authority condemned over seventy acres of the petitioning landowners' 351–acre parcel.[1] A commission of landholders found that the value of the property taken was $1,323,691.15 and also found that the petitioners' remaining property, the portion that was not condemned, was specially benefited by $297,000 by virtue of the new highway. When a landowner's property is condemned as part of a highway project, the highway may directly increase the value of the landowner's remaining property through specific improvements such as better access and changes in available uses, which are known as special benefits.

Following the mandate of section 38–1–114(2)(d), 10 C.R.S. (2003), the takings compensation statute, the trial court applied the $297,000 in special benefits determined by the commission by first reducing the amount of damages to the petitioners' remaining property from $100,000 to zero, and then reducing the compensation for the property taken by the $197,000 surplus in special benefits.

We affirm the trial court's holding that section 38–1–114(2)(d) does not violate article II, section 15 of the Colorado Constitution, which requires that landowners receive just compensation for property taken or damaged. Article II, section 15, by its terms, entitles a landowner to the value of which he has been deprived. It does not require cash to be paid for property taken or damaged. In construing article II, section 15, this Court has never held that "just compensation" requires payment only in cash. Such a holding would contradict, in principle, over 100 years of precedent affirming special benefits as a form of just compensation when applied to the remaining property.

In 1987, the Colorado General Assembly enacted section 38–1–114(2)(d), which requires a trial court to apply special benefits not only to reduce the amount of damages to

---

1. Although E–470 was the petitioner and the landowners were the respondents before the trial court, we refer to the landowners as petitioners and E–470 as the respondent in this appeal because the landowners petitioned this Court and brought this appeal.

the landowner's remaining property but also to reduce the landowner's compensation for the property taken.

The General Assembly may provide the method for calculating just compensation when a landowner's property is taken in a condemnation proceeding provided that the method satisfies the guarantee of our just compensation clause. Before the taking, the landowner owns the entire property, which includes the value of the remaining property and the value of the land taken. After the taking, the landowner possesses the value of the remaining property plus compensation for the land taken, which shall be reduced by the value of any surplus in special benefits to the remaining property according to the mandate of section 38–1–114(2)(d). In sum, the value of the payment received plus the value of the remaining property possessed by the landowner after the taking, enhanced by the special benefits, is equivalent to the value of the landowner's property prior to the taking. Thus, section 38–1–114(2)(d) does not conflict with the just compensation guarantee of our constitution because the landowner receives the value of which he has been deprived. Accordingly, we defer to the General Assembly's method of calculating compensation and hold that this statute is constitutional.

In addition, we hold that the trial court's application of section 38–1–114(2)(d) in this case did not violate article II, section 15. As a result of the taking, the petitioners were owed $1,323,691.15 for the property actually taken and $100,000 for damages to their remaining property, which comes to a total of $1,423,691.15. As compensation, they received a cash payment of $1,126,691.15 and $297,000 in special benefits, for a total of $1,423,691.15 received. Thus, the petitioners received the value of which they had been deprived, as required by article II, section 15 of our constitution.

Therefore, we affirm the decision of the trial court and return this case to that court for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS BELOW

Petitioners Steven A. Revenig, trustee, and Howard L. Farkas owned approximately 351 acres of undeveloped land in Aurora, Colorado. Through condemnation proceedings, respondent E–470 Public Highway Authority ("E–470") subsequently acquired from the petitioners 60.9 acres in fee and 12.6 acres in easements for its highway project.

A commission of landholders then determined the value of the property taken and the effect of the highway project on the remaining property. After a trial, the commissioners assessed the value of the property taken at $1,323,691.15 and the value of special benefits to the remaining property at $297,000. The commissioners had been instructed that special benefits resulting from the E–470 highway project "must result directly in a benefit to the [remaining property] and be particular to it" and that such benefits "are to be measured by the increase, if any, in the reasonable market value of the [remaining property] due to the construction of the E–470 Highway."

The commission's assessments of the value of the property taken and the value of the special benefits were not appealed; however, its assessment of the amount of damages to the remaining property was appealed. After this Court held that the commission's determination of damages to the remaining property was not supported by the evidence and was excessive as a matter of law, *Jagow v. E–470 Pub. Highway Auth.*, 49 P.3d 1151 (Colo.2002), petitioners accepted a remittitur of $100,000 in damages to the remaining property on remand. The trial court applied the $297,000 in special benefits by reducing the amount of damages to the petitioners' remaining property from $100,000 to zero, leaving a surplus of $197,000 in special benefits. Applying section 38–1–114(2)(d), the trial court then reduced the $1,323,691.15 value of the property taken by the $197,000 surplus in special benefits, leaving petitioners with a total condemnation award of $1,126,691.15.

The petitioners appealed to the court of appeals, where the parties filed a stipulated motion to transfer the case to this Court pursuant to section 13–4–109(1)(a), 5 C.R.S. (2003), because issues of significant public

interest were at stake. We accepted jurisdiction of the case to determine whether section 38–1–114(2)(d) violates article II, section 15 of the Colorado Constitution.[2]

## ANALYSIS

### Section 38–1–114(2)(d) Does Not Violate Article II, Section 15 of the Colorado Constitution

■ Petitioners argue that section 38–1–114(2)(d), which requires the trial court to reduce a landowner's compensation for property taken by the amount of special benefits to the remaining property, conflicts with the just compensation guarantee of article II, section 15 of the Colorado Constitution. We disagree.

■ We review the trial court's assessment of the constitutionality of section 38–1–114(2)(d) de novo. *Gen. Motors Corp. v. City & County of Denver*, 990 P.2d 59, 67 (Colo. 1999). We begin with the presumption that section 38–1–114(2)(d) is constitutional, and we must uphold the statute unless the petitioners prove it is unconstitutional beyond a reasonable doubt. *People v. Vasquez*, 84 P.3d 1019, 1021–22 (Colo.2004). Further, we must uphold the constitutionality of a statute unless a "clear and unmistakable" conflict exists between the statute and a provision of the Colorado Constitution. *City of Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440 (Colo.2000).

■ The General Assembly may provide the method for calculating just compensation when a landowner's property is taken in a condemnation proceeding provided that the method satisfies the constitutional guarantee of just compensation. *Colo. Midland Ry. v. Jones*, 29 F. 193, 193 (D.Colo.1886) ("The

legislature may provide under what circumstances and in what manner this compensation shall be determined ...."); *see also Gustavus Adolphus Coll. v. Dep't of Transp.*, 714 A.2d 802, 803 (Me.1998) ("In the absence of any constitutional limitations, the Legislature may prescribe the terms, conditions and methods for the evaluation of just compensation for the taking of private property."); *State Highway Comm'n v. Greensboro City Bd. of Educ.*, 265 N.C. 35, 143 S.E.2d 87, 92 (1965) ("It is the exclusive prerogative of the Legislature—limited only by our organic law which requires that just compensation shall be paid for the land so appropriated—to prescribe the method of taking land for public use."); *Kellett v. Fulton County*, 215 Ga. 551, 111 S.E.2d 364, 365 (1959) ("The method of ascertaining what is just and adequate compensation is [a] matter for adoption and regulation by the legislature.").

Article II, section 15 provides, "Private property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. art. II, § 15. Accordingly, we must decide whether the General Assembly's method of determining compensation in section 38–1–114(2)(d) conflicts with the guarantee of just compensation contained in article II, section 15. Because the phrase "just compensation" is not defined by our constitution, we turn to our case law construing article II, section 15 for guidance.

In *Alexander v. City & County of Denver*, this Court concluded that the just compensation guarantee entitles a landowner whose property is taken or damaged "to receive the value of what he has been deprived of, and nothing more."[3] 51 Colo. 140, 144, 116 P. 342, 344 (1911) (holding that a condemnation award for property taken reduced by the amount of a special assessment did not vio-

---

2. We accepted jurisdiction in this case to consider the following issue:

Whether the portion of Section 38–1–114(2)(d), C.R.S., which provided that, in highway acquisitions, compensation for the property taken shall be reduced by the amount of any special benefits that result from the improvement or project, but not to exceed fifty percent of the total amount of compensation for the property taken, is unconstitutional, facially and as applied, when tested against article II, section 15 of the Colorado Constitution.

3. In reasoning that landowners are entitled to the value of which they have been deprived, and nothing more, we do not hold that article II, section 15 establishes a constitutional upper limit on the amount of compensation a landowner may receive for a taking. Subject to constitutional limitations, setting policy on condemnation awards is the prerogative of the General Assembly, which must balance fairness to the landowner and to the public.

late the just compensation guarantee of article II, section 15). In recent years, we have reaffirmed the definition of just compensation articulated in *Alexander. See, e.g., E‑470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo.2000); *City of Englewood v. Weist*, 184 Colo. 325, 331, 520 P.2d 120, 123 (1974). Another recent formulation of our basic test for just compensation is that the landowner "must be put in as good [a] position pecuniarily as if the property had not been taken." *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17 P.3d 797, 802 (Colo.2001).

Both parties agree that reducing an award of compensation by the amount of special benefits to the remaining property does not, in itself, conflict with the just compensation guarantee in article II, section 15 of our constitution. In 1883, this Court stated that special benefits may be applied to reduce an award of compensation for damages to a landowner's remaining property, and since that time we have approved this method of calculating damages as a form of just compensation under article II, section 15. *City of Denver v. Bayer*, 7 Colo. 113, 127–28, 2 P. 6, 15 (1883) ("If, by reason of the proximity of the railroad thereto, plaintiff's property is in any way peculiarly benefited . . ., such benefit should be considered and the value thereof allowed in determining the amount of his compensation."); *see also Boxberger v. State Highway Comm'n*, 126 Colo. 526, 534–35, 251 P.2d 920, 925 (1952) (discussing former takings compensation statute that allowed special benefits to be applied to reduce compensation for damages to remaining property, but not compensation for property taken); *Denver Joint Stock Land Bank v. Bd. of County Comm'rs*, 105 Colo. 366, 371, 98 P.2d 283, 286 (1940) ("The benefits which may be set off against damages, where part of a tract of land, as in the instant case, is taken, are those accruing to the residue of the tract from the construction of the improvement.").

■ Because special benefits are a valid form of compensation under article II, section 15, just compensation is not, as the petitioners argue, synonymous with a cash payment. The language of article II, section 15, by its terms, does not require cash to be paid for property taken or damaged; rather, it requires that "just compensation" be provided. In construing article II, section 15, this Court has never held that "just compensation" requires payment only in cash. Such a holding would contradict, in principle, over 100 years of precedent affirming special benefits as a form of just compensation when applied to the remaining property.[4]

When a landowner's property is condemned as part of a highway project, the project may result in special benefits, which are specific improvements to the landowner's remaining property. Such benefits directly increase the fair market value of a landowner's remaining property, and their value can be calculated with reasonable certainty. *See 455 Co.*, 3 P.3d at 23; *Denver Joint Stock Land Bank*, 105 Colo. at 371, 98 P.2d at 286; *see also State ex rel. State Highway Comm'n. v. Tate*, 592 S.W.2d 777, 779 (Mo. 1980) (Special benefits include such improvements as "availability for new or better uses, facilities for ingress and egress, improved drainage, sanitation, [and] flood protection"; "paradigm examples" of special benefits in highway acquisitions are "changes in available uses or in the facilities for direct access.").

In 1987, the Colorado General Assembly adopted a new method of calculating the compensation owed to a landowner in highway acquisitions.[5] Section 38–1–114(2)(d) provides that compensation for property taken for or damaged by a highway project shall be reduced by the amount of any special

---

4. Our conclusion that just compensation is not synonymous with a cash payment accords with the approach of the federal courts and a substantial minority of states that allow special benefits to offset not only damages to remaining property but also compensation for property taken. *See* 3 Julius L. Sackman, *Nichols on Eminent Domain* § 8.02[1] (3d ed.2003).

5. Although Colorado's practice for approximately 100 years before 1987 was not to reduce the award of compensation for property taken by the amount of special benefits to the remaining property, this practice does not rise to the level of a constitutional requirement or guarantee of just compensation.

benefits resulting from the project, but not to exceed fifty percent of the total amount of compensation for property taken. If a highway project directly increases the value of the landowner's remaining property, the trial court shall apply this increased value to reduce the landowner's compensation for the property that is taken:

> [For a highway acquisition], the compensation for the property taken and damages to the residue of said property shall be reduced by the amount of any special benefits which result from the improvement or project, but not to exceed fifty percent of the total amount of compensation to be paid for the property actually taken.

§ 38–1–114(2)(d). The General Assembly's new method requires a trial court to apply special benefits not only to reduce the amount of damages to the landowner's remaining property, which has long been approved as a form of just compensation under article II, section 15, but also to reduce the amount of compensation for property taken, which we have never before tested against our constitutional guarantee of just compensation.

Modern highway systems include many features not envisioned within the common understanding of the term "highway" in past generations, such as complex interchanges, high-occupancy vehicle lanes, park-and-ride facilities, and electronic message boards. The General Assembly enacted the takings compensation statute to reflect the complex nature of modern highway systems. In so doing, the General Assembly attempted to strike a balance between the interests of individual landowners whose property is taken and the interests of the taxpaying public. This statute was intended not only to ensure that landowners receive adequate monetary compensation for property taken, but also to allow the monetary compensation to be reduced by a reasonable amount where the price of land in the path of a proposed highway has been increased by virtue of the public improvement. The legislature determined that the value of land in the path of a proposed highway may be driven up by the actions of speculators, who may know the general location of a new highway years in advance of construction. The State Highway Department estimated that by allowing compensation for property taken to be reduced by the value of the special benefits to the remaining property, the impact of land speculation on highway projects could be diminished. *See* Hearings on S.B. 27 before the Senate Transportation Committee, 56th Gen. Assembly, 1st Reg. Sess. (Jan. 27, 1987) (statement of State Highway Comm'r Hanavan); Statement on S.B. 27, 56th Gen. Assembly, 1st Reg. Sess. (Apr. 16, 1987) (statement of bill sponsor Rep. Berry before Colo. House of Reps.). It is the General Assembly's prerogative to balance these interests between the landowner and the taxpaying public in determining the compensation owed to a landowner whose property is taken, provided that its calculus falls within the broad parameters of the Colorado Constitution.

Article II, section 15 lists two ways in which a landowner may be deprived of property, either by being "taken" or by being "damaged." By its terms, the provision does not require different forms of compensation for these different types of property deprivations. Instead, it provides that a single form of compensation, "just compensation," is required for both takings and damages.

When part of a landowner's property is condemned for a highway project, the results to the landowner are a detriment in the form of a taking of property and, in some cases, a benefit in the form of the increased value of the remaining property.[6] These offsetting consequences to separate parcels arise from a single transaction, the highway project. In addition, these offsetting consequences accrue to a single landowner. As a result, allowing the award of compensation for the property taken to be reduced by the amount of special benefits to the remaining property, even though the offsetting detriment and benefit arise from different parcels, does not conflict with article II, section 15.

Before the taking, the landowner owns the entire property, which includes the value of the remaining property and the value of the land taken. After the taking, the landowner

---

6. As article II, section 15 contemplates, the remaining property may also be damaged.

possesses the value of the remaining property plus compensation for the land taken, which shall be reduced by the value of any surplus in special benefits to the remaining property according to the mandate of section 38–1–114(2)(d). In sum, when an award of compensation for property taken is reduced by the amount of special benefits, the value of the payment received plus the value of the land still possessed by the landowner after the taking, enhanced by the special benefits, is equivalent to the value of the landowner's property prior to the taking. Thus, the landowner receives "the value of what he has been deprived of, and nothing more." *Alexander*, 51 Colo. at 144, 116 P. at 344. In other words, the landowner is placed in "as good [a] position pecuniarily as if the property had not been taken." *Fowler*, 17 P.3d at 802.

Thus, the landowner receives just compensation, and there exists no conflict between the takings compensation statute and article II, section 15 of the Colorado Constitution. Applying both the presumption of constitutionality and the requirement that the landowner must prove the statute unconstitutional beyond a reasonable doubt, we defer to the General Assembly's method for calculating just compensation in section 38–1–114(2)(d) and hold that this statute is constitutional.

Petitioners make three arguments to support the position that just compensation for property taken requires payment only in cash. We are not persuaded.

First, petitioners argue that we should follow the majority of states, which do not permit an award of compensation for property taken to be reduced by the amount of special benefits to the remaining property.[7] However, we note that both federal law and a substantial minority of states allow compensation for property taken to be reduced by the amount of special benefits to the remaining property.[8] Although there is a substantial amount of authority on both sides of this issue, our decision does not rest on the reasoning of either the majority or minority approach. Rather, our decision rests on our conclusion that the statute does not conflict with Colorado's just compensation clause, on the heavy burden of proof necessary to hold the statute unconstitutional, and on deference to the General Assembly's method for calculating a landowner's compensation for highway condemnation.

Second, petitioners argue that according to our case law construing the just compensation clause, they are entitled to payment only in cash. However, the cases relied on by petitioners stand only for the proposition that they are entitled to compensation for the fair market value of the property taken.[9] In this case, the petitioners received the fair market value of their property, taking into account the special benefits to the remaining property.

7. *See* Sackman, *supra*, § 8A.03; *see, e.g., State v. Enter. Co.*, 728 S.W.2d 812 (Tex.Ct.App.1986) (disallowing a reduction in compensation for property taken by the amount of special benefits to the remaining property under the "adequate compensation" guarantee of the Texas Constitution); *Kane v. City of Chicago*, 392 Ill. 172, 64 N.E.2d 506, 508 (1946); (reasoning that "[t]he rule has been long settled" in Illinois that compensation for property taken may not be reduced by the amount of special benefits to the remaining property). Notably, most of the states that do not permit an award of compensation for property taken to be reduced by the amount of special benefits to the remaining property have statutes to that effect, which supports the principle that it is the General Assembly's prerogative to provide the method for calculating just compensation.

8. *See* Sackman, *supra*, § 8A.03; *see, e.g., Bauman v. Ross*, 167 U.S. 548, 570, 574–75, 17 S.Ct. 966,

42 L.Ed. 270 (1897) (holding that the compensation for property taken may be reduced by the amount of special benefits under the Fifth Amendment's guarantee of just compensation because a landowner "is entitled to receive the value of what he has been deprived of, and no more"); *State ex rel. Chicago B. & Q.R. Co. v. City of Kansas*, 89 Mo. 34, 14 S.W. 515 (1886) (holding that an award of compensation for property taken may be reduced by the amount of special benefits to the remaining property).

9. *See Leadville Water Co. v. Parkville Water Dist.*, 164 Colo. 362, 365, 436 P.2d 659, 660 (1967) ("The phrase 'just compensation' as applied to eminent domain has been commonly defined as payment to the owner of the fair and reasonable market value of his property."); *Swift v. Smith*, 119 Colo. 126, 139, 201 P.2d 609, 615 (1949) ("Under the Constitution it is not token that the landowner is entitled to receive; it is just compensation.").

Our conclusion that just compensation does not require payment only in cash is consistent with the U.S. Supreme Court's interpretation of the··federal just compensation clause.[10] That Court stated that "n[ ]o decision of this Court holds that compensation other than money is an inadequate form of compensation under eminent domain statutes." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 150, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). In *Bauman v. Ross*, the Court addressed the same issue before us now and held that the Fifth Amendment guarantee of just compensation does not conflict with reducing compensation for property taken by the amount of special benefits to the remaining property. 167 U.S. 548, 574–75, 17 S.Ct. 966, 42 L.Ed. 270 (1897).[11] In so holding, the *Bauman* Court rejected the view that cash payment is the only permissible form of just compensation by stating ·that "the constitution does not require that the value should be paid, but that just compensation should be given." *Id.* at 570, 17 S.Ct. 966.

Third, petitioners argue that our use of the term "pecuniarily" in dicta in *Fowler* implies that just compensation requires payment only in cash. *Fowler*, 17 P.3d at 802 ("[T]he owner must be put in as good [a] position pecuniarily as if the property had not been taken."). The term "pecuniarily" means in monetary terms, i.e., in terms of fair market value. *See* XI *Oxford English Dictionary* 417 (2d ed.1989) (defining "pecuniarily" as "in

respect of money"). This definition is consistent with our use of the term in *Fowler*, a case in which the form of compensation for the taking was not in dispute; rather, the case addressed the amount of compensation due a landowner for a temporary taking. 17 P.3d ·797. Moreover, the U.S. Supreme Court case from which we borrowed the quote containing the term "pecuniarily" used it to connote fair market value.[12] Thus,. we conclude that *Fowler* stands for the accepted proposition that a landowner must receive the fair market value of property taken, which the petitioners in this case received in cash plus special benefits.

### Section ·38–1–114(2)(d), as Applied in this Case, Did Not Violate Article II, Section 15 of the Colorado Constitution

 Having concluded that section 38–1–114(2)(d) does not conflict with the constitutional guarantee of just compensation under article II, section 15, we next consider whether the statute, as applied in this case, violated article II, section 15. A statute that is constitutional on its face may be unconstitutional as applied. *People v. Albrecht*, 145 Colo. 202, 208, 358 P.2d 4,. 8 (1960).

 It is undisputed in this case that as a result of E–470's highway project, the petitioners were specially benefited by $297,000,[13] and that $100,000 of those benefits were used to reduce· the amount of dam-

---

10. Although the language of article II, section 15 of our constitution differs from its federal counterpart, we have "considered decisions of the United States Supreme Court construing the federal takings clause as a guide" in determining what constitutes a taking. *Cent. Colo. Water Conservancy Dist. v. Simpson*, 877 P.2d 335, 346 (Colo.1994). In addition, we have relied upon Supreme Court cases as a guide in determining whether compensation is just. *See, e.g., Fowler*, 17 P.3d at 802–04.

11. We note that *Bauman*, despite having been decided in 1897, has been cited with approval by this Court, *see Farncomb v. City and County of Denver*, 64 Colo. 13, 16, 171 P.· 66, 67 (1918), *Alexander v. City and County of Denver*, 51 Colo. 140, 144, 116 P. 342, 344 (1911), *City of Denver v. Londoner*, 33 Colo. 104, 112, 80 P. 117, 119 (1904), and the Supreme Court has never retreated from this construction of the federal just compensation clause.

12. *See U.S. v. Gen. Motors Corp.*, 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311 (1945) ("Only in the sense that he is to receive [the value of the interest taken] is it true that the owner must be put in as good [a] position pecuniarily as if his property had not been taken. In the ordinary case, for want of a better standard, market value, so-called, is the criterion of value.").

13. Although the amount of special benefits received by the petitioners was properly adjudicated and not· appealed, petitioners argue that a determination of the value of special benefits may involve speculation. However, in *Denver Joint Stock Land Bank v. Bd. of County Comm'rs*, we held that benefits that are speculative in nature may not be used to reduce compensation owed to a landowner. 105 Colo. 366, 371, 98 P.2d 283, 286 (1940). Accordingly, only those direct benefits to a·landowner's property that may be calculated with reasonable certainty may be deducted under section 38–1–114(2)(d).

ages to their remaining property, leaving a surplus of $197,000 in special benefits. Following section 38–1–114(2)(d), the trial court used this $197,000 surplus to reduce the petitioners' payment for the property taken.

Petitioners argue that they are entitled to $197,000 in cash in addition to the surplus of $197,000 in special benefits received. However, we have already established that under article II, section 15, the petitioners were entitled to receive the value of which they were deprived and that just compensation is not synonymous with a cash payment. In this case, petitioners received the compensation to which they were entitled.

As a result of the taking, the petitioners were owed $1,323,691.15 for the property actually taken and $100,000 for damages to their remaining property, which comes to a total of $1,423,691.15. As compensation, they received a cash payment of $1,126,691.15 and $297,000 in special benefits, for a total of $1,423,691.15 received. Thus, the petitioners received the value of which they had been deprived, as required by article II, section 15 of our constitution.[14] Accordingly, we hold that the trial court's application of section 38–1–114(2)(d) to the facts of this case did not violate article II, section 15.

### Conclusion

For the reasons stated above, we affirm the decision of the trial court and return this case to that court for further proceedings consistent with this opinion.

Justice KOURLIS dissents.

Justice KOURLIS dissenting.

Article II, Section 15 of the Colorado Constitution demands that a landowner whose property is condemned *receive* "just compensation" for that property. Deducting from that payment some amount attributable to

intangible benefits that may inure to a separate piece of property violates that guarantee of just compensation. Accordingly, in my view, section 38–1–114(2)(d), 10 C.R.S. (2003), is unconstitutional on its face and as applied in this case. Therefore, I respectfully dissent from the majority opinion.

### I. Under Colorado Law, the Statute is Unconstitutional

The issue we confront today is a matter of state law, uniquely shaped and mandated by the language of Colorado's own constitution. Our constitution requires that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation". Colo. Const. art. II, § 15. Interpreting that constitutional provision, this court has consistently held that just compensation means monetary payment. *See Swift v. Smith,* 119 Colo. 126, 201 P.2d 609, 615 (1949); *Leadville Water Co. v. Parkville Water Dist.,* 164 Colo. 362, 436 P.2d 659, 660 (1967). Prior to the passage of section 38–1–114(2)(d) and its specific provisions related to highway acquisition, there was no question in Colorado but that special benefits could be set off against damages only, but not against the value of the land taken. *Boxberger v. State Highway Comm'n,* 126 Colo. 526, 251 P.2d 920, 925 (1953); *Denver Joint Stock Land Bank v. Bd. of County Comm'rs,* 105 Colo. 366, 98 P.2d 283, 286 (1940). The landowner was entitled to the full value, in monetary form, of the land actually taken. Indeed, we have even specifically held that a landowner need not accept substitute benefits in lieu of compensation for property taken. *Great W. Ry. Co. v. Ackroyd,* 44 Colo. 454, 98 P. 726, 727 (1908); *Burlington & C.R. Co. v. Schweikart,* 10 Colo. 178, 14 P. 329, 332 (1887).

Hence, we have a constitution in Colorado that guarantees just compensation to the

---

**14.** Because our constitution entitles landowners whose property is taken or damaged to the value of which they have been deprived, we are not persuaded by petitioners' argument that our holding will result in disparate and unfair outcomes. On one hand, if all of a landowner's property is taken in a highway condemnation and that landowner is paid the fair market value for the property in cash, then that landowner has received the value of which he has been deprived, as required by our constitution. On the other hand, if a landowner's property is neither taken nor damaged, but the landowner receives special benefits to the property, then the landowner has not been deprived of any property and article II, section 15 of our constitution is not implicated.

owner of property taken without his consent, and a history of case law that "jealously guard[s]" that right. *Lamborn v. Bell,* 18 Colo. 346, 32 P. 989, 991–92 (1893).

Despite the majority's assertions that this court has endorsed non-monetary just compensation in the past, maj. op. at 1042, no case has ever held that just compensation for property physically taken could be computed other than by dollars paid. In fact, as recently as 2001, this court held that just compensation requires that "the owner must be put in as good position *pecuniarily* as if the property had not been taken." *Fowler Irrevocable Trust 1992–1 v. City of Boulder,* 17 P.3d 797, 802 (Colo.2001) (quoting *U.S. v. General Motors Corp.,* 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311 (1945)) (emphasis added). The plain meaning of the term pecuniary, as well as its dictionary definition, equates to monetary compensation, not some intangible form of special benefits. *See* The Concise Oxford Dictionary 1006 (9th ed.1995) (pecuniary means "of, concerning, or consisting of, money."). The cases to which the majority cites stand for the proposition that benefits may be offset against damages as to residual property—a completely different concept than the one the majority addresses today.

It is, of course, indisputable that this court must defer to the General Assembly and must hold a statute constitutional unless the petitioners are able to demonstrate that it is unconstitutional beyond a reasonable doubt. Maj. op. at 1041. Hence, my inquiry is simply whether this is, as the majority suggests, a matter appropriately conferred to the legislature's discretion in prescribing the terms, conditions and methods for the evaluation of just compensation, or whether it is a matter that cuts to the heart of just compensation in violation of the constitution. In my view, it is the latter.[1]

For that conclusion, I rely upon three precepts: A) landowners are entitled to monetary compensation in Colorado and special benefits do not constitute money; B) section 38–1–114(2)(d) creates disparate and unfair results in measuring compensation; and C) section 38–1–114(2)(d) is arbitrary in that it applies only to highway projects, not to other takings, and it arbitrarily reduces the value of the land taken by up to fifty percent, but not more.

**A.**

Just compensation means the reasonable market value of the property taken—the price it would bring if sold in the open market. *Goldstein v. Denver Urban Renewal Auth.,* 192 Colo. 422, 560 P.2d 80, 82–83 (1977). Section 38–1–114(2)(d) directs that the monetary condemnation award payable to a landowner whose property is condemned must be reduced by any special benefits attributable to remainder property, up to fifty percent of the total award. The undeniable impact of that statute is to create a situation in which a landowner may receive only one-half of the monetary value of the condemned property. The majority concludes otherwise, relying on cases such as *Bauman v. Ross,* 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897), for the proposition that just compensation need not be monetary, and that, therefore, the increase in value to the landowner's remaining property may properly be calculated into the total award for purposes of reaching "just" compensation.

Initially, I would observe that *Bauman,* in 1897, looked to an "overwhelming number of decisions in the courts of the several states ... [that] support this view...." *Id.* at 977. In reality, most of the states upon which the Court relied for that proposition have since reversed course.[2] More importantly, in re-

---

**1.** I would not accept the E–470 Authority's invitation to struggle with the question of whether the right to compensation is a fundamental one or not. I would merely find that just compensation for property taken means monetary compensation, and as such, the statute violates that constitutional mandate. See *Keller v. Miller,* 63 Colo. 304, 165 P. 774 (1917), for a case in which this court reached the conclusion that a statute purporting to deny a landowner his costs similar-

ly violated constitutional requirements of just compensation without any need to define the particular level of constitutional scrutiny.

**2.** The Court relied upon Kansas, Massachusetts, New York, New Jersey, Ohio, and Pennsylvania law. Massachusetts, New York, New Jersey, Ohio and Pennsylvania now allow the setoff of special benefits against damages to the remainder only and not against the value of the property

cent times, the Supreme Court itself has specifically equated just compensation to monetary compensation. *U.S. v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336 (1943) (Just compensation means "the full and perfect equivalent *in money* of the property taken.") (emphasis added); *U.S. v. Reynolds,* 397 U.S. 14, 16, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970) (stating that "just compensation means the full monetary equivalent of the property taken"); *Phillips v. Washington Legal Found.,* 524 U.S. 156, 177, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (same). The majority's position today does not conform to this modern trend. Thus, I cannot agree that "federal law and a substantial minority of states allow compensation for property taken to be reduced by the amount of special benefits to the remaining property." Maj. op. at 1044.

Special benefits [3] to remainder property have no place in the just compensation calculus for property *actually taken.* There is and can be no special benefit that accrues to the parcel of property being condemned.[4] That property provides no benefit at all to the landowner—indeed, the landowner will no longer own it at the conclusion of the condemnation proceeding. Because of that simple proposition, the condemning authority has traditionally only been entitled to introduce evidence regarding benefits if the landowner is claiming damage to remainder property. Julius L. Sackman, Nichols on Eminent Domain § 8A.02[5] (3d ed.2003).

The focus is on the damage and benefit to the remainder property—not on how those damages or benefits impact the property being condemned.

It is for that reason that the majority of states around the nation follow the rule that special benefits may be set off against, or deducted from, damages to the remainder property but not to offset compensation due for the property taken. Sackman, *supra,* § 8A.02[6]. Most of those states have statutes to that effect, and the courts have therefore not needed to evaluate the constitutionality of a statute that provides otherwise. *See e.g.,* Utah Code Ann. § 78–34–10 (2003); Wyo. Stat. Ann. § 1–26–706 (Michie 2003).

However, a number of other state courts around the nation have directly held that it would be unconstitutional to permit the payment of something less than the market value of the land actually taken.[5] The courts reason that imposing upon landowners the deduction associated with uninvited and perhaps never-realized benefits is inconsistent with principles of just compensation.

Under the majority's construction, a landowner is not only required to give up the condemned portion of his property, but would also be forced to sell the remainder property in order to be made whole. Specifically, the landowner recognizes no gain on the remainder property unless or until he sells it. That gain may be illusory; it may

---

taken. Julius L. Sackman, Nichols on Eminent Domain §§ 8A.03[24], [33], [35], [38], [41] (3d ed.2003).

**3.** Parenthetically, the statute invites confusion regarding the differences between special benefits and general benefits. A general benefit is one that is common to all lands in the vicinity of the condemnee's property, and a special benefit is one that accrues directly to the particular land remaining after a partial taking. *Mack v. Bd. of County Comm'rs,* 152 Colo. 300, 381 P.2d 987, 991 (1963); Julius L. Sackman, Nichols on Eminent Domain § 8A.02[4](3d ed.2003). Although the question of whether the benefits attributable to the remainder property in this case were truly "special" has not been raised here, it is embedded in the calculation that the statute permits. Particularly when addressed in the context of a highway construction project, the distinction between special and general benefits will beleaguer the courts.

**4.** Indeed, if the property being taken were valued after the installation of the improvements rather than before, it too might be worth more. However, under the majority's reasoning, the landowner does not realize any special benefit increase in value in the land taken, but must pay for it in special benefits attributable to the remainder and debited against the property taken.

**5.** *Commonwealth v. Powell,* 258 Ky. 131, 79 S.W.2d 411, (1935); *Chiesa v. State,* 43 A.D.2d 359, 351 N.Y.S.2d 735 (N.Y.App.Div.1974); *Williams Natural Gas Co. v. Perkins,* 952 P.2d 483, 487 (Okla.1997); *State Highway Comm'n v. Hooper,* 259 Or. 555, 488 P.2d 421 (1971); *Capital Properties, Inc. v. State,* 636 A.2d 319 (R.I. 1994); *State v. Enterprise Co.,* 728 S.W.2d 812 (Tex.App.1986); and *State v. Smith,* 25 Wash.2d 540, 171 P.2d 853 (1946).

be over-stated; it may be under-stated. In any event, it does not relate to the property taken, for which the condemning entity owes that landowner just and fair value.

## B.

Second, the statute creates unfair outcomes. In a hypothetical situation, three landowners could border the new highway construction project and could experience completely different economic outcomes. If all of landowner A's property is necessary to the project, he will receive the fair market value of that property free of any deductions. If none of landowner B's property is necessary to the project, but he will receive a special benefit attributable to the project in the form of an access outlet, he will enjoy the full advantage of that benefit without any negative economic consequences. It is only landowner C, who both has property being taken and also remainder property, who will be forced to pay for the benefit to his remaining property by way of deduction from the fair market value of the property condemned. That outcome, in the words of a New York appellate court, would result in an "unconstitutionally discriminate exercise of taxing power in favor of a neighboring owner who suffers no loss of land, but benefits by the public improvement which led to the taking." *Chiesa v. State,* 43 A.D.2d 359, 351 N.Y.S.2d 735, 737 (N.Y.App.Div.1974).

## C.

Lastly, the statute is inherently arbitrary. It reduces the compensation due to a landowner whose property is being taken for highway construction purposes, while preserving just compensation for other condemnees. The statute begins by providing in pertinent part that:

In estimating the value of all property actually taken, the true and actual value at such time shall be allowed and awarded. No deduction therefrom shall be allowed for any benefit to the residue of said property. In estimating damages occasioned to other portions of the claimant's property or any part thereof other than that actually taken, the value of the benefits, if any, may be deducted therefrom. In all cases the owner shall receive the full and actual value of all property actually taken. In case the benefit to the property not actually taken exceeds the damages sustained by the owner to the property not actually taken, the owner shall not be required to pay or allow credit for such excess.

§ 38–1–114(1).

The statute goes on, then, to create a series of special exceptions applicable only to highway acquisitions. Only in such context may compensation for the property taken and damages to the residue of the property be diminished by the amount of special benefits attributable to the project. § 38–1–114(2).

Nowhere in the constitution do I find an article that creates exceptions for highway acquisition. Just compensation is due to a landowner irrespective of the identity of the condemnor or nature of the purpose for which condemnation is being undertaken. It is not susceptible to different definitions in different contexts, or to an arbitrary floor or ceiling.

Similarly, the statute, without any explanation or rationale, provides that the deduction may not exceed fifty percent of the total condemnation award. § 38–1–114(2)(d). Presuming that the purpose of that section is to save tax dollars by reducing highway expenditures or in the alternative to prevent landowners from receiving a windfall, limiting the deduction to fifty percent is not logically related to the achievement of either of these goals. For example, if fifty acres of a 100–acre ranch (with a fair market value of $100,000) was condemned and the other fifty acres remained, but received special benefits in the amount of $100,000, under the majority's analysis, the landowner is entitled to zero dollars in just compensation "and nothing more." Maj. op. at 1041. However, when the fifty percent deduction rule is applied, the landowner would still receive $50,000 in compensation. Clearly if just compensation can consist of benefits and not dollars, then the landowner should, under the majority approach, receive nothing. The $50,000 would be a windfall. Hence, the arbitrary fifty percent limitation on deductions itself undermines any logical under-

standing of the purpose and application of the statute.

## II. Conclusion

I read section 38–1–114(2)(d) as a direct affront to Article II, Section 15 of the Colorado Constitution. It redefines just compensation under the constitution in such a way as to allow non-monetary compensation for a taking, which contravenes decades of this court's precedent. It further applies that new definition only to landowners whose property is being taken for highway construction, and then creates an artificial maximum amount of the deduction against the condemnation award.

Contrary to the majority's assertion, there is nothing in the constitution that suggests a condemnation award should balance the interests of the individual landowner whose property is taken against the interests of the taxpaying public. Maj. op. at 1043. Just compensation is not a sliding scale, dependent upon whether the landowner is a "speculator" or a third generation owner, or dependent upon whether the State has ample revenue or not. Any balancing of interests should be conducted by the condemning entity *prior* to deciding whether to condemn a private individual's land for a public purpose—not *after* the decision has been made and the economic consequences of that decision are brought to bear. Just compensation is an absolute. Landowners are not charged with the duty to contribute their property for the public good. Rather, private property rights are protected, such that if the public entity requires the use of the landowner's property, that landowner will receive the full value of the property—just as if it had been sold in an arms-length transaction. That protection is a quintessential aspect of our system of public and private interface, and I view the statute as an impermissible attempt to shift part of the costs of highway construction onto private landowners.

For all of those reasons, I respectfully dissent. I would reverse the trial court and remand this case for recalculation of the condemnation award applying the dollar amount of any benefit as a credit only against damage to the remainder.